JACKSON ET AL., APPELLANTS AND CROSS-APPELLEES, v.
ALERT FIRE AND SAFETY EQUIPMENT, INC. ET AL., APPELLEES;
SOUTH AKRON AWNING ET AL., APPELLEES AND CROSS-APPELLANTS.

[Cite as Jackson v. Alert Fire & Safety Equip., Inc. (1991), 58 Ohio St. 3d 48.]

(No. 89-1770—Submitted November 19, 1990—Decided March 6, 1991.)

*Daniel M. Walpole* and *Paul E. Weimer*, for appellants and cross-appellees.

*Roetzel & Andress, George A. Clark* and *Orlando J. Williams*, for appellees.

*Buckingham, Doolittle & Burroughs* and *David W. Hilkert*, for appellees and cross-appellants.

DOUGLAS, J. The issue before this court focuses on whether the court of appeals properly concluded that summary judgment should be granted in favor of Alert and Murdock, and denied, except as to the intentional infliction of emotional distress claim, as to Levinson's and Awning. For the reasons that follow, we affirm the court of appeals' ruling.

I

*Alert and Murdock*

First we turn our attention to whether the trial court and court of appeals correctly determined that Alert and Murdock be granted summary judgment on Jackson's and Kelley's claims of strict liability and implied warranty in tort. This court, in *Temple v. Wean United, Inc.* (1977), 50 Ohio St. 2d 317, 4 O.O. 3d 466, 364 N.E. 2d 267, specifically adopted Section 402A of 2 Restatement of the Law 2d, Torts (1965) 347-348, as a plaintiff's proper remedy for harm suffered from a seller's defective product. In *Temple, supra,* at 320, 4 O.O. 3d at 468, 364 N.E. 2d at 270, we emphasized that strict liability in tort and implied warranty are "virtually indistinguishable," and stated that a manufacturer or seller of a defective product, for purposes of strict liability, is liable to an injured party if the injured plaintiff proves that: " '(1) There was, in fact, a defect in the product manufactured and sold by the defendant; (2) such defect existed at the time the product left the hands of the defendant; and (3) the defect was the direct and proximate cause of the plaintiff's injuries or loss.' * * *" (Citations omitted.) *Id.* at 321, 4 O.O. 3d at 468, 364 N.E. 2d at 270.

In cases subsequent to *Temple,* we adopted a consumer expectation standard to determine if a product is defective. This standard provides that a product may be deemed defective if it is more dangerous than an ordinary consumer would expect when used in an intended or reasonably foreseeable manner. See *Leichtamer v. American Motors Corp.* (1981), 67 Ohio St. 2d 456, 21 O.O. 3d 285, 424 N.E. 2d 568, paragraph two of the syllabus; *Knitz v. Minster Machine Co.* (1982), 69 Ohio St. 2d 460, 23 O.O. 3d 403, 432 N.E. 2d 814, syllabus[3]; *State Farm Fire & Cas. Co. v. Chrysler Corp.* (1988), 37 Ohio St. 3d 1, 523 N.E. 2d 489, paragraph three of the syllabus.

Notwithstanding common-law liability for a seller of a defective product as mentioned *supra,* the General

---

[3] In *Knitz,* this court also held that a product can be defective due to a product design if the benefits of the challenged design do not outweigh the risk inherent in such design.

Assembly, pursuant to former R.C. 2305.33,[4] provided certain non-manufacturing sellers of an allegedly defective product statutory relief from liability on causes of action based upon strict liability or implied warranty in tort. Alert and Murdock, in their summary judgment motions, sought to limit their liability under the statute.

R.C. 2305.33 provided, in general terms, that a seller, pursuant to Civ. R. 56, was entitled to summary judgment if the seller proves that: (1) it did not alter or fail to maintain the product while it was in the seller's possession; (2) the manufacturer is amenable to suit and not financially insolvent; (3) the seller, upon request of the injured party, provides the person making the request with the name and address of the manufacturer; and (4) "[t]he seller did not have actual knowledge of the alleged defect in the product and, based upon facts available to him, could not have been expected to have had knowledge of the alleged defect * * *." (Former R.C. 2305.33[B][1] through [4].) (140 Ohio Laws, Part I, 372-375.)

Jackson and Kelley do not contend that Alert and Murdock have failed to comply with R.C. 2305.33(B)(1) through (3). Rather, Jackson and Kelley assert Alert and Murdock have failed to offer probative evidence sufficient to satisfy the prerequisites of section (B)(4) of the statute. Specifically, Jackson and Kelley urge that the affidavits attached in support of Alert's and Murdock's motions are "self-serving conclusory statements" and, therefore, are insufficient to warrant summary judgment. Jackson and

Kelley also suggest they have presented sufficient counterbalancing evidence, thus creating a genuine issue of fact for trial.

Civ. R. 56 is the rudimentary authority and controls our determination as to whether Alert and Murdock are entitled to summary judgment under R.C. 2305.33(B)(4). Specifically at issue here are those requirements found in sections (C) and (E) of the rule.

Civ. R. 56(C) provides, in part, that: "Summary judgment shall be rendered forthwith if the pleading, depositions, *answers to interrogatories*, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact * * * show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. * * *" (Emphasis added.) Hence, given the explicit language of Civ. R. 56(C), a court is not limited to review of the moving party's affidavit(s) attached in support of his or her motion for summary judgment. More appropriately, the court may examine *all* evidence properly before it. Such evidence may include pleadings, depositions, *answers to interrogatories*, written admissions, affidavits, transcripts and written stipulations of fact.

Equally important to our resolution of this issue are those requirements found in Civ. R. 56(E). This section provides in part: "When a motion for summary judgment is made and *supported as provided in this rule*, an adverse party may not rest upon mere allegations or denials of his pleadings, but his response, by affidavit or as otherwise provided in this rule, *must set forth specific facts showing that there is a genuine issue for trial*." (Emphasis added.) In reading

---

[4] R.C. 2305.33 was repealed effective January 5, 1988. A seller's liability is now addressed in R.C. 2307.78.

section (C) in association with section (E), it can be readily seen that once a party moves for summary judgment and has supported his or her motion by sufficient and acceptable evidence, the party opposing the motion has a reciprocal burden to respond by affidavit or as provided in section (C) *setting forth specific facts* explaining that a genuine issue for trial exists. See *Mitseff* v. *Wheeler* (1988), 38 Ohio St. 3d 112, 115, 526 N.E. 2d 798, 801.

Turning to the facts at bar, Alert and Murdock, in support of their motions for summary judgment, attached the affidavits of Thomas E. Dauchy, Alert's President, and Thomas A. Price, Murdock's Chairman, Treasurer and CEO. Dauchy's and Price's affidavits stated that their respective corporations "did not have actual knowledge of the alleged defect in * * * [the] gloves and, based upon facts available to * * * [them], could not have been expected to have knowledge of the alleged defect in * * * [the] gloves * * *." In addition, Alert and Murdock filed a supplemental memorandum in support of their motion. The memorandum included answers to interrogatories. Alert, in response to an interrogatory submitted by Kelley, stated that "* * * it is a well known fact that [Nitty Gritty or Polar Bear] gloves * * * should not be used in structural firefighting circumstances [and] [t]hese gloves are not designed for super heated situations, but could be used for salvage and overhaul operations to keep hands clean and dry." Similarly, Murdock responded to an interrogatory submitted by Kelley and stated that it was not engaged in the business of selling fire protection equipment; Nitty Gritty 93 NFW gloves are coated with rubber and are not manufactured for use in firefighting applications; and the gloves are designed to keep hands warm and dry and for protection against abrasions. Moreover, Alert and Murdock stated that neither the manufacturer of the gloves, nor they, ever represented, sold or marketed either type of glove as suitable for structural firefighting purposes.

Jackson and Kelley responded to the motion for summary judgment by submitting their personal affidavits. The thrust of the affidavits was that the gloves were defective because they did not comply with National Fire Protection Association ("NFPA") standards and that Alert and Murdock knew or could have been expected to know the existence of the standards.

Keeping in mind the evidence submitted, and applying the requirements of Civ. R. 56(C) and (E) in conjunction with R.C. 2305.33(B)(4), it is apparent that Alert and Murdock, the movants, in their affidavits *and interrogatories*, specifically gave their basis for summary judgment. On the other hand, Jackson and Kelley, the non-moving parties, did not adequately refute and *set forth specific facts* demonstrating that a triable issue exists. Jackson's and Kelley's responses merely rested on whether Alert and Murdock complied with NFPA standards and that, in and of itself, does not demonstrate that Alert or Murdock had knowledge or, based upon facts available to them, could have been expected to know the gloves would not be fit for structural firefighting purposes. "There should be no doubt that resting on mere allegations against a motion for summary judgment and eschewing the mandate of Civ. R. 56(E) is insufficient." *King* v. *K.R. Wilson Co.* (1983), 8 Ohio St. 3d 9, 11, 8 OBR 79, 80, 455 N.E. 2d 1282, 1283.

Accordingly, we find that summary judgment was properly granted to Alert and Murdock on Jackson's and Kelley's claims of strict liability and implied warranty in tort.

We turn next to the question of

whether summary judgment was properly granted to Alert and Murdock on Jackson's and Kelley's negligence claims. Jackson essentially contends that Alert failed to warn him that the Polar Bear gloves were defective and inherently dangerous. Kelley makes a similar argument and contends that Murdock failed to warn the city that the Nitty-Gritty gloves the city purchased, and issued to him, were defective and inherently dangerous.

In *Temple, supra,* we stated that: "* * * The rule imposing obligation on the manufacturer or seller to give suitable warning of a dangerous propensity of a product is a rule fixing a *standard of care,* and any tort resulting from the failure to meet this duty is, in essence, a negligent act. See Prosser on Torts (4 Ed.), Section 96. In Ohio, the case law has established that a manufacturer or vendor is negligent when he *has knowledge* of a latent defect rendering a product unsafe and fails to provide a warning of such defect. * * *" (Citations omitted.) (Emphasis added.) *Id.* at 325, 4 O.O. 3d at 470-471, 364 N.E. 2d at 272-273.

Section 388 of Restatement of Torts 2d, *supra,* at 300-301, sets forth that a supplier of a product is subject to liability if the supplier:

"(a) *knows or has reason to know* that the chattel is or is likely to be dangerous *for the use for which it is supplied,* and

"(b) has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition, and

"(c) fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be dangerous." (Emphasis added.)

Comment *e* to Section 388, at 303, adds, *inter alia,* that in order for a seller of a chattel to subject itself to liability "* * * not only must the person who uses the chattel be one whom the supplier should expect to use it with the consent of him to whom it is supplied, but the chattel *must also be put to a use to which the supplier has reason to expect it to be put. * * *"* (Emphasis added.)

In the case *sub judice,* Alert and Murdock tendered evidence that neither type of glove was manufactured or sold for the purpose of structural firefighting. Jackson and Kelley failed to refute this evidence. Jackson and Kelley did not proffer evidence that the gloves were unsafe for the intended use and that Alert or Murdock knew or had reason to know that the product would be dangerous for the use for which it was supplied.

Therefore, in light of the discussion above, we find that the court of appeals was correct in determining that Alert and Murdock had no duty to warn Kelley and Jackson. Accordingly, Alert and Murdock were properly awarded summary judgment on Jackson's and Kelley's negligence claims.

Jackson and Kelley also contend that they have cognizable claims for *negligent* infliction of emotional distress. However, such a contention need not be addressed, since we have found that Alert and Murdock were not negligent.

Finally, Jackson and Kelley claim all defendants are liable for *intentional* infliction of emotional distress. We disagree.

In *Yeager* v. *Local Union 20* (1983), 6 Ohio St. 3d 369, 6 OBR 421, 453 N.E. 2d 666, this court, for the first time, recognized a cause of action for intentional infliction of emotional distress and, in the syllabus, stated that:

"One who by *extreme* and *outrageous conduct* intentionally or recklessly causes serious emotional distress to another is subject to liability

for such emotional distress, and if bodily harm to the other results from it, for such bodily harm. (*Bartow* v. *Smith* 149 Ohio St. 301 [37 O.O. 10], overruled.)" (Emphasis added.)

Upon review of the record, we find that the conduct of Alert and Murdock cannot be categorized as extreme or outrageous. Furthermore, we also note that Kelley has made a similar claim against Levinson's and Awning. However, as in the case of Alert and Murdock, the conduct of neither Levinson's nor Awning can be considered extreme or outrageous. Accordingly, summary judgment was properly awarded to all defendants on this claim.

## II

### Levinson's

Levinson's, in support of its position that the court of appeals erred in reversing the trial court's granting of summary judgment in its favor, generally makes two arguments. Levinson's seeks to escape liability by asserting that it has complied with all requirements of R.C. 2305.33 and, pursuant to *Boyle* v. *United Technologies Corp.* (1988), 487 U.S. 500, it is entitled to immunity. We disagree and find that both arguments lack merit.

In support of its motion for summary judgment, Levinson's attached and, primarily relied upon, the affidavit of Gustave Levinson, President and CEO of the company. In his affidavit, Gustave stated, *inter alia*, that the "* * * corporation ha[d] no knowledge of any alleged defect in the Mr. Two[-]Ply pants and, based upon the facts available to it, believes that the Mr. Two-Ply pants are not in any way defective." Gustave also stated that he inspected the pants worn by Kelley and found that the pants were not burned, scorched, melted or otherwise damaged in the fire.

Kelley responded to the motion for summary judgment and in his affidavit stated that Levinson's is in the business of selling uniforms to firefighters; Levinson's sold pants to Kelley knowing Kelley was employed as a fireman by the city; and the pants did not comply with NFPA standards and Levinson's knew or could have been expected to know that the pants did not comply with NFPA standards for structural firefighters.

It is clear to us that Kelley, by filing an affidavit in opposition to the motion for summary judgment of Levinson's, effectively set forth specific facts, as required by Civ. R. 56(E), demonstrating that issues of fact not susceptible to summary judgment remain. Kelley specifically urged that Levinson's, which *is in the business of selling* firefighting uniforms, sold pants to Kelley *knowing Kelley was a firefighter*. Kelley also propounded that the pants were defective in that they did not comply with NFPA standards. Hence, issues are left unanswered as to whether Levinson's had knowledge or could have been expected to know of the NFPA standards and whether the pants, if defective, did not meet the standards.

Levinson's also relies on *Boyle*, in support of the proposition that a supplier of a product is not liable to injured third parties when the supplier has provided a product mandated and designed by a governmental entity.[5]

The issue in *Boyle* involved federal pre-emption and required the court to decide the applicability of Virginia state law versus federal law when a military contractor provides military equipment to the federal government and, thereafter, a third party (Marine

---

[5] Awning, in its brief to this court, also makes virtually the same argument.

helicopter copilot) is killed due to an alleged design defect. The court found that federal law pre-empted state law where "(1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about dangers in the use of the equipment known to the supplier but not to the United States. * * *" *Boyle, supra,* at 512.

Based on the reasoning of *Boyle,* Levinson's insists it is not liable to Kelley because the city has specified and approved what uniform, including pants, Kelley was to wear. However, neither the issue nor the parties in *Boyle* can be reconciled with the case at bar. The present appeal does not involve a federal versus state law question nor does it involve a military contractor who contracts with the United States. Any attempt to equate the parties in *Boyle* with the present situation is simply inaccurate. Therefore, *Boyle,* being distinguishable, does not apply.

In conclusion, Kelley, by filing an affidavit in opposition to the motion of Levinson's, effectively established that triable issues exist. The court of appeals properly concluded that the trial court erroneously granted the motion of Levinson's based on R.C. 2305.33, and that summary judgment should not have been granted on Kelley's negligence claim. A question of fact exists as to whether the pants were defective and, if so, whether Levinson's had a duty to warn purchasers. Accordingly, we affirm the court of appeals' finding that Levinson's is not entitled to summary judgment.

### III
#### *Awning*

Awning contends that by adding approximately ten inches of material to the bottom of Kelley's coat it provided a service and not a product. Awning urges that because it provided a service, Section 402A of the Restatement, *supra,* is inapplicable and, therefore, it cannot be held strictly liable. We disagree.

Section 402A of the Restatement of Torts 2d, *supra,* at 347-348, provides, in part that:

"Special Liability of *Seller of Product* for Physical Harm to User or Consumer.

"(1) One who sells *any product* in a defective condition unreasonably dangerous *to the user or consumer* or his property is subject to liability for physical harm thereby *caused to the ultimate user or consumer* * * *." (Emphasis added.)

Interpreting Section 402A, this court has previously acknowledged that strict liability applies only to the sale of a product in a defective condition and not to a service. *Otte* v. *Dayton Power & Light Co.* (1988), 37 Ohio St. 3d 33, 36, 523 N.E. 2d 835, 836.

In *Otte,* we determined that electricity supplied by a public utility is a service and not a product. This court reasoned that a "product" is "anything made by human industry or art," whereas electricity is a "service" because it does not require a manufacturing process. *Id.* at 36, 523 N.E. 2d at 838.

Black's Law Dictionary (6 Ed. 1990), at 1209, defines a "product" as "[g]oods produced or manufactured, either by natural means, by hand, or with tools, machinery, chemicals, or the like. Something produced by physical labor or intellectual effort * * *." In contrast, "services" are "[t]hings purchased by consumers *that do not have physical characteristics* (*e.g.,* services of doctors, lawyers, den-

tists, repair personnel)." (Emphasis added.) *Id.* at 1369.

We are cognizant of the fact that oftentimes a clear line cannot be drawn when trying to determine whether a product or service has been provided. However, that is not the situation in the present case. Upon review of the facts before us, and applying the foregoing definitions, we are convinced that Awning supplied a product as opposed to a service.

We reach our decision for the following reasons. Kelley alleged that the added material was defective. He testified that the material "shriveled up" as a result of the fire. The record indicates that the city requested that Awning sew additional material onto Kelley's coat for the specific purpose of lengthening the coat to keep water from entering his boots. The city authorized and paid Awning for the work. The lengthening process evidently included labor, use of equipment, and additional material not already part of the coat. It is also apparent that Awning profited from the transaction.

Furthermore, Awning did not merely sell its professional expertise in this area nor did it simply let out a hem to obtain the proper length. Material was *added* to an already existing product. The added material had a distinct physical characteristic. Indeed, Awning, by adding material, was in a superior position to inspect and ascertain whether the material was defective.

In addition, it is not plausible to assume, as claimed by Awning, that it was acting as a repairperson. "To repair," in the generally accepted sense of the word, would mean to restore an item to its original condition. By adding material and lengthening the coat, it is not arguable that Awning was attempting to restore the Morning Pride fire coat. Awning undoubtedly knew the coat was to be lengthened for a firefighter and it undoubtedly knew the material could, and likely would, come into contact with flames or excessive heat.

Accordingly, we hold that Awning did, in fact, provide a product when it sewed material to the bottom of Kelley's coat. In so finding, we conclude that Section 402A of the Restatement, *supra*, is applicable to Awning. A triable issue remains concerning Awning's liability for injuries allegedly sustained by Kelley.

Awning also urges that strict liability is inapplicable because its sole duty was to the city, the intended beneficiary of the contract. Essentially, Awning's argument suggests that privity of contract must exist between itself and Kelley in order for Kelley to recover under strict liability. Again, we disagree.

Comment *l* to Section 402A of the Restatement elaborates on the issue of privity in a strict liability setting and states, in part, that:

"* * * In order for the rule stated in this Section to apply, it is not necessary that the ultimate user or consumer have acquired the product directly from the seller * * *. The liability stated is one in tort, *and does not require any contractual relation, or privity of contract*, between the plaintiff and the defendant." (Emphasis added.) *Id.* at 354.

In light of the foregoing, it is immaterial whether Awning and the city contracted to lengthen Kelley's coat. The important fact is that Kelley acquired the lengthened coat and was wearing it at the time of his injuries. Privity of contract is not required.

As a final note, we also conclude that Awning may be liable to Kelley in negligence. Having determined that Awning supplied a product and not a

service, Kelley effectively raised a triable issue of fact whether Awning breached a duty to Kelley when attaching the material to Kelley's coat.

### IV

In conclusion, the court of appeals properly determined that summary judgment should be granted in favor of Alert and Murdock, and denied as to Levinson's and Awning, except as to the claim of intentional infliction of emotional distress. Accordingly, we affirm the judgment of the court of appeals and remand the cause to the trial court for further proceedings not inconsistent with this opinion.

*Judgment affirmed and cause remanded.*

SWEENEY, WRIGHT, H. BROWN and RESNICK, JJ., concur.

MOYER, C.J., and HOLMES, J., concur in part and dissent in part.

HOLMES, J., concurring in part and dissenting in part. I concur with the majority opinion as it affirms the court of appeals relative to Alert and Murdock. I also concur in that portion of the opinion which affirms the court of appeals relative to Levinson's.

However, I dissent from the majority opinion in its affirmance of the court of appeals relative to Awning, except as to the claim of intentional infliction of emotional distress. With respect to Awning, the motion for summary judgment, as granted by the trial court, should have been affirmed, in that this company had rendered services in adding a lengthening panel to the fireman's coat, and had not supplied a product to the city for the use of its fireman.

MOYER, C.J., concurs in the foregoing opinion.