McCURDY, Appellant,

v.

MIHM, Admr., et al.; Delco Moraine Division,
General Motors Corporation, Appellee.

[Cite as *McCurdy v. Mihm* (1993), 89 Ohio App.3d 363.]

Court of Appeals of Ohio,
Montgomery County.

No. 13935.

Decided Aug. 13, 1993.

*Hochman & Roach Co., L.P.A., Barbara J. Morsa* and *David G. Roach,* for
appellant.

*Crew, Buchanan & Lowe* and *James G. Neary,* for appellee Delco Moraine
Division, General Motors Corporation.

FREDERICK N. YOUNG, Judge.

James E. McCurdy (appellant) is appealing from a summary judgment decision
of the Common Pleas Court of Montgomery County, which held that his workers'
compensation claim for a psychiatric condition was barred by the statute of
limitations.

On October 22, 1980, the appellant sustained an injury arising out of and in the course of his employment with appellee, Delco Moraine Division, General Motors Corporation ("Delco"). He filed a claim for workers' compensation benefits which was allowed by the Industrial Commission of Ohio ("commission") for the condition of injury to "right testicle and back."

On March 8, 1989, appellant filed a motion to amend his claim for workers' compensation benefits to include the additional condition of "dysthymic disorder," which was denied by both the district hearing officer of the commission and the Dayton Regional Board of Review. The commission then refused to hear the appellant's appeal. The appellant first appealed to the common pleas court from the decision of the commission on August 16, 1990, but then voluntarily dismissed that case on May 14, 1991. He refiled the same claim on May 14, 1992. The defense of the case both before the trial court and here on appeal is by the employer Delco. The administrator has not filed a brief on this appeal.

Delco moved for summary judgment on January 14, 1993, which was followed by a memorandum of appellant in opposition and a reply to that memorandum by Delco. Delco supported its motion and memorandum with deposition excerpts and case law. The appellant with his memorandum filed an affidavit and case law. The trial court noted in its decision that "both parties submitted supporting exhibits which were not considered as they failed to comply with Civil Rule 56 requirements."

The trial court rendered its decision on February 17, 1993, finding that there were no genuine issues of material fact and that the motion of the appellee was well taken.

The essence of the case is set forth in the following excerpts from the opinion and decision of the trial court:

" * * * The complaint contends that McCurdy is entitled to participate in the benefits provided by the Worker's Compensation Fund of the State of Ohio for the additional condition (dysthymic disorder) which he has developed subsequent to his October 22, 1980 injury.

"Defendant Delco argues in it's [sic] motion that this complaint is barred by the two year statute of limitations set forth in *Ohio Revised Code Section 4123.84* as explained in *Clementi v. Wean United, Inc.* (1988), 39 Ohio St.3d 342 [530 N.E.2d 909]. R.C. *4123.84* states:

" '(A) In all cases of injury or death, claims for compensation or benefits for the specific part or parts of the body injured shall be forever barred unless, within two years after the injury or death: (1) Written notice of the specific part or parts of the body claimed to have been injured has been made to the industrial commission or the bureau of workers' compensation[.]'

"*Clementi* held that 'R.C. 4123.84 requires a claimant to file a motion for an additional allowance within two years of the time the claimant knew or should have known of the additional condition.' *Id.* at p. 347 [530 N.E.2d at 913]. *Clementi* dealt with a flow through psychiatric condition, a flow through injury being one that develops in a body part not originally alleged under R.C. 4123.84(A)(1).

" * * * *

"In order to grant summary judgment, there can be no question as to whether or not the Plaintiff knew or should have known that he suffered from dysthymia more than two years prior to the date on which he applied for additional benefits. Plaintiff has referred to the Diagnostic and Statistical Manual of Mental Disorders (DSM III R) for a definition of dysthymia. Dysthymia, also called Depressive Neurosis, is a chronic disturbance of mood involving depression for most of the day more days than not. However, this state of depression does not become dysthymia until the person has suffered for more than two years without having a break in the depression of two or more months. Dysthymia is defined in a standard medical dictionary such as Dorland's Illustrated Medical Dictionary (26th Edition, 1981) as a mental depression. Plaintiff, in his deposition, testified that he was treated on an irregular basis for work-related depression before his accident and again after the accident. Plaintiff stated that he noticed that his problems were getting worse within a few months after he was injured. He went back to the doctor after the injury because he was dealing with more anxiety and depression as a result of his injury. He further indicated that he has suffered daily with this problem and the amount of suffering varies only by degree, some days being worse than others.

"Plaintiff's injury occurred in October, 1980, more than twelve years ago. Plaintiff knew that his mental condition was worse after the accident and he has suffered ever since. The fact that he found a doctor to put the label of 'dysthymia' on his problem in 1989 does not change his own testimony that he knew of the problem within a few months of the injury."

Included in the court's opinion is the following discussion concerning the supporting exhibits submitted by both parties which the court first said it was not going to consider for failure to comply with Civ.R. 56:

"Plaintiff's alternative argument supports this conclusion. This argument contends that Claimant was examined within two years of his original injury and that the findings and diagnosis were memorialized at that time. Plaintiff contends that the report was 'likely' sent to the Bureau of Workers' Compensation at that time and that the report constituted notice of the Claimant's additional psychiatric condition. Defendant has submitted an affidavit from the local director of the Bureau, who has actual possession of the file of James E.

McCurdy, which states that there is no such report contained within the file. This argument, combined with the Plaintiff's own testimony, leads to the conclusion that Plaintiff had known of his condition for more than two years prior to the date he filed for additional benefits, March 8, 1989."

Since the trial court has implicitly recognized and considered the exhibits, we find them properly before us on this appeal.

It is from this decision of the trial court sustaining the appellee's motion for summary judgment and dismissing the appellant's complaint that the appellant now appeals, presenting us with one assignment of error:

"The trial court erred by granting summary judgment in favor of the defendant, Delco Moraine Division, and against the plaintiff, James E. McCurdy, because a genuine issue of material fact remains as to whether plaintiff's action is barred by the statute of limitations."

I

We must first determine whether summary judgment was proper in this case. Civ.R. 56 controls summary judgment practice and provides in pertinent part:

"(C) * * * Summary judgment shall be rendered forthwith if the pleading, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law * * * A summary judgment shall not be rendered unless it appears from such evidence or stipulation and only therefrom, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made * * *."

In construing Civ.R. 56, the Ohio Supreme Court has stressed that its language forms a tripartite test whereby the moving party must establish (1) that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion is made, who is entitled to have the evidence construed most strongly in his favor. *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 66, 8 O.O.3d 73, 74, 375 N.E.2d 46, 47.

In addition, on a motion for summary judgment, a nonmovant may not rest on the mere allegations or denials of his pleadings, but must set forth specific facts showing that there is a genuine issue for trial. Civ.R. 56(E).

As the trial court explained, this case turns on whether the appellant knew or should have known of his additional psychiatric condition before two years prior to the time he filed his claim asking benefits for the additional condition. *Clementi v. Wean United, Inc., supra.* Delco presented to the trial court in its motion for summary judgment excerpts from the deposition of the appellant taken on March 27, 1992, which proved that appellant had been seeing a psychiatrist, Percy Mitchell, M.D., prior to his industrial injury, and after the injury:

"A. * * * then I started seeing him again after I was injured in '80, '81 and maybe even '82 * * *.

" * * * *

"Q. Why did you return to him after you were injured?

"A. Job stress and dealing with how to get my life back on track after I'd been injured * * *.

" * * * *

"Q. So it would be accurate to state that you went to see Dr. Mitchell to help you deal with emotional difficulties arising from your injury in 1980 or 1981?

"A. That's true * * *.

" * * * *

"Q. * * * you had seen him for a period of time for work related depression in the late seventies but you didn't see him regularly and then you went back to see him after your injury?

"A. Yes."

Appellant also sought another psychiatrist during this time, a Dr. Burke:

"Q. When did you see Dr. Burke?

"A. Probably '82, '83.

" * * * *

"Q. And did you see Dr. Burke to deal with—to have him help you deal with emotional difficulties you were having as a result of your industrial injury?

"A. Yes."

During deposition appellate described the symptoms associated with emotional problems and then was asked:

"Q. When did these symptoms first strike you?

"A. You mean depression in general?

"Q. Yes.

"A. I would say probably in—when I first started, treated for it, probably late to mid seventies.

"Q. And have those problems gotten worse since your industrial injury?

"A. * * * when did I first notice—I guess probably within a few months after I was injured.

" * * *

"Q. And I believe you testified earlier that you went and you saw Dr. Mitchell within a year or two of your industrial injury to address these problems?

"A. Yes. I saw Dr. Mitchell either right after or shortly thereafter.

" * * *

"Q. And the reason you had to go back to see him was because the industrial injury was—

"A. Because I was dealing with more anxiety, more depression.

"Q. Because of your injury?

"A. Yes, related to my injury."

The appellant in his brief admits that he had increased psychological difficulties following his industrial accident and that he sought treatment from both Mitchell and Burke. The appellant's only counterargument is that he was not told that he was suffering from something called "dysthymic disorder" until he was examined by Flexman and Greenfield in 1989.

The facts submitted by the appellant in his deposition and the fact that a name was put on the disorder in 1989 are not in dispute. The appellant has simply failed "to define with great specificity the area in which a factual dispute exists," which he is required to do in attacking a motion for summary judgment. *North v. Pennsylvania RR. Co.* (1967), 9 Ohio St.2d 169, 171, 38 O.O.2d 410, 411, 224 N.E.2d 757, 760; *Jackson v. Alert Fire & Safety Equip., Inc.* (1991), 58 Ohio St.3d 48, 51–52, 567 N.E.2d 1027, 1030–1032.

The trial court could properly draw its legal conclusions from the undisputed facts before it and summary judgment was therefore clearly proper in this case.

## II

We now turn to the sole issue of whether the appellant knew or should have known of his additional condition prior to March 8, 1987, which is the date two years before he filed his motion for the allowance of additional benefits. If he did know or should have known of his condition prior to that date, his claim for additional allowance is barred by the statute of limitations. R.C. 4123.84; *Clementi v. Wean United, Inc., supra.*

There is no question whatsoever that based upon the appellant's own statements during his deposition that he knew that he was suffering from an emotional or a mental condition that had been severely enhanced by his injury at work and that was adversely affecting his life and his enjoyment of it. The appellant's argument is based solely on the premise that he did not know of his condition until it was diagnosed to him as dysthymia in 1989. The appellant's argument is not well taken.

We and other courts have held consistently, and as recently as March of this year, that the *Clementi* decision "does not hold that in order for the statute of limitations to commence under R.C. 4123.84, an individual must have actual knowledge of a flow-through injury as a result of a doctor's diagnosis. This court has noted that the date of the diagnosis does not necessarily determine the date that the statute commences. Actual knowledge of a specific diagnosis is not required to commence the statute of limitations period. *Shade v. Hewitt Soap Co.* (May 11, 1992), Montgomery App. No. 12797, unreported [1992 WL 102918]. The issue is whether Smith knew or should have known of the additional condition, not whether a doctor told her that she had an additional condition." *Smith v. Berry* (Mar. 26, 1993), Montgomery App. No. 13431, unreported, at 5, 1993 WL 85404.

In the *Hewitt* case cited by Judge Fain in the *Smith* case this court stated that "[t]he law does not require that the statute of limitations is tolled until a claimant has actual knowledge of a specific diagnosis. Hence, the date of the diagnosis does not necessarily determine the date the statute begins to run." *Shade v. Hewitt Soap Co., supra,* at 4. The opinion of the trial court in that same *Hewitt* case sets forth the rationale for refusing to begin the statutory two-year period on the date the diagnosis was rendered as follows:

"Common experience tells us that the exact nature of a medical problem never clarifies itself until an accurate diagnosis is made. However, the individual afflicted, more likely than not, senses or is aware that a problem exists beforehand whether or not he or she communicates it to another. Thus, for purposes of determining the appropriate time period for statute of limitations, the focus properly rests upon the individual's experience, not the eventual diagnosis to determine when the individual knew or should have known a condition existed."

This court considered a set of facts very similar to this case in *Snyder v. Mayfield* (Aug. 4, 1986), Montgomery App. No. 9853, unreported, 1986 WL 8523. In an opinion by Judge Wolff in *Snyder* we found that an additional claim for dysthymic order which was filed by the claimant on December 12, 1983, was barred by the statute of limitations. The following appears in that opinion:

"Here, Mr. Snyder admitted that Dr. Pavolotos first treated him in 1978 'as a psychology, psychiatry, or whatever you call it.' He also attributed his emotional problems—insomnia, nervousness, excess smoking and memory loss—to his

industrial injury. (Tr. 13–15). Dr. Pavolotos testified that Mr. Snyder appeared depressed when he treated him on May 3, 1979, and that he spoke to Mr. Snyder about depression. Dr. Pavolotos' opinion was that Mr. Snyder's depression was caused by the industrial injury, and he prescribed Elavil—an antidepressant—because of the industrial accident. (Tr. 25).

"We believe the record discloses facts sufficient to demonstrate that Mr. Snyder knew, or should have known, of this additional accident-related emotional condition no later than May 3, 1979, and that his motion filed December 12, 1983, for allowance of the additional condition, was indeed time-barred by 4123.84. *Brock (McCoy) v. Mayfield, supra* [ (June 27, 1986), Montgomery App. No. 9686, unreported, 1986 WL 9268]; *Hall v. Diamond International Corp.* (1984), 24 Ohio App.3d 203 [24 OBR 326, 493 N.E.2d 1370]."

Our holdings above have been consistent with other court of appeals decisions in this state on the same issue. See, *e.g., Morris v. McGraw Edison Co.* (Nov. 28, 1989), Franklin App. No. 89AP–831, unreported, 1989 WL 142868; *Price v. Gen. Motors Corp.* (June 2, 1989), Trumbull App. No. 3994, unreported, 1989 WL 59035; *Sweet v. Lear Siegler, Inc.* (Nov. 15, 1990), Cuyahoga App. No. 57671, unreported, 1990 WL 178182; *Traster v. Goodyear Tire & Rubber Co.* (Aug. 19, 1992), Summit App. No. 15444, unreported, 1992 WL 205068; and *Turman v. Mt. Carmel Med. Ctr.* (May 19, 1992), Franklin App. No. 91AP–1332, unreported, 1992 WL 113098.

Appellant points out that dysthymia may only be diagnosed after there has been at least a two-year period in which the person is never without depression for more than two months. Diagnostic and Statistical Manual of Mental Disorders (3 Ed.1987) 230. Thus, appellant argues, an injured employee is precluded from obtaining workers' compensation benefits for dysthymia because the statute of limitations would always have run by the time the worker is diagnosed. In fact, however, such an injured employee can file for benefits before the statute has run by claiming a "depression disorder not otherwise specified"—a DSM–3 claim that is clearly listed by the commission as available. The benefits for such a claim and a claim for dysthymia would be the same, and therefore such an injured employee is not prejudiced by being unable to file a claim for dysthymia due to the two-year waiting period built into its diagnosis.

We find there was ample evidence, based upon appellant's own testimony, for the trial court to conclude that appellant knew he had a severe emotional problem that had been aggravated by his physical injury long before the two-year period preceding the filing of his claim for the aggravated condition. The assignment of error is overruled and the judgment is affirmed.

*Judgment affirmed.*

GRADY, P.J., and BROGAN, J., concur.