An accelerated appeal is authorized pursuant to App.R. 11.1 and Loc.R. 25. The purpose of an accelerated docket is to allow an appellate court to render a brief and conclusory decision.Crawford v. Eastland Shopping Mall Assn. (1983), 11 Ohio App.3d 158; App.R. 11.1(E).
Plaintiffs-appellants[1] appeal from the April 9, 1998 granting of defendants-appellees'[2] motion for summary judgment. For the reasons adduced below, we reverse and remand for further proceedings.
The record indicates that the underlying action involved a motor vehicle accident. On Sunday, January 21, 1996, defendant-appellee Mr. Newton Campbell ("Campbell"), was employed by defendant-appellee ROC Lakeside, Inc., d.b.a. Lakeside Holiday Inn, as a courtesy van driver. While transporting two flight attendants from the downtown Cleveland hotel location to Cleveland Hopkins Airport at approximately 5:10 p.m., Campbell's 1993 Ford F-350 van experienced mechanical problems as it traveled along the westbound lanes of Interstate 90 in downtown Cleveland near the Superior Avenue exit, just past "dead man's curve."[3] Campbell merged from the high speed lane to the middle, or center, lane of traffic. Campbell was prevented from getting over to the curb adjoining the slow speed lane due to congested traffic and the mechanical condition of the van which deprived the driver of the means to maneuver the van as it naturally and inexorably slowed its forward movement to about 15 m.p.h.. As a result of the traffic not permitting him to merge to the curb lane, and realizing that his forward movement was continuing to slow, Campbell used his brakes to finally stop the van in the center lane, placed the transmission in the parked position and activated his disabled vehicle's emergency flashing lights. At that point, the accelerator was stuck and the engine raced; the excessive engine revolutions caused the engine's cooling system to overheat. Campbell then proceeded to have his passengers exit the van and walk to the safety of the curbside of the interstate. According to the police report, the area of the accident was 190 feet West of the Superior Avenue overpass. The traffic on the interstate then maneuvered around the stationary van. Approximately ten to fifteen minutes later, a 1985
Lincoln Towncar operated by plaintiff-appellant Mr. Robert Murray, Jr. ("Murray"), collided with the rear of the stricken van. Murray's vehicle was preceded by another unknown vehicle which, at the last minute, swerved to avoid the van. Murray claimed that his view of the van was blocked by the unknown vehicle which preceded him. After striking the rear of the van, Murray's vehicle was, in turn, rear-ended by a third vehicle operated by Mr. Alan Collica.
The defendants' motion for summary judgment was filed on September 29, 1997. This motion was supported by the affidavit of Campbell and plaintiffs' responses to a request for admissions.
With leave of court provided on at least three occasions, ostensibly so that plaintiffs could conduct further discovery, the plaintiffs filed their brief in opposition to summary judgment on February 2, 1998. This brief in opposition was supported by an unauthenticated copy of Mr. Campbell's deposition[4], an affidavit by Mr. Murray, an unauthenticated copy of the police report of the accident, and unauthenticated copies of documentary evidence provided during discovery allegedly detailing the maintenance and/or repair records of the van in question from approximately one year prior to the accident to one year after the accident.
On February 12, 1998, defendants filed a reply brief in support of the motion for summary judgment, supported by excerpts from Campbell's deposition.
On March 11, 1998, plaintiffs filed a surreply brief opposing summary judgment with no supporting evidence attached.
The trial court granted summary judgment on April 9, 1998, without elucidation or explanation using a half-sheet status form entry.
On April 17, 1998, eight days after the ruling on the motion for summary judgment, plaintiffs filed a motion for reconsideration. Attached to this motion was an engineering expert's affidavit prepared by William D. Berg, Ph.D. The defendants filed a brief in opposition to reconsideration on August 24, 1998, in which it was indicated that the utilization of Mr. Berg as an expert was past the court-imposed deadline for such, to-wit, September 14, 1997, and was long past the final deadline for opposing the motion for summary judgment (which multiple extensions of time were permitted so as to conduct discovery pursuant to Civ.R. 56[F]). See Local Rule 21.1 of the Cuyahoga County Common Pleas Court, General Division.
On July 20, 1998, the trial court denied reconsideration without opinion. On July 23, 1998, defendants voluntarily dismissed their pending counterclaim pursuant to Civ.R. 41(A) (1), thereby making the court's decision regarding summary judgment a final order. This timely appeal by plaintiffs followed from the summary judgment ruling.[5] The lone assignment of error presented states:
 "THE TRIAL COURT ERRED IN GRANTING DEFENDANT-APPELLEES' (sic) MOTION FOR SUMMARY JUDGMENT WHEN MATERIAL ISSUES OF FACT EXISTED AS TO DEFENDANT-APPELLEES' (sic) NEGLIGENCE AS COMPARED TO PLAINTIFF-APPELLANTS' (sic) ALLEGED NEGLIGENCE, IF ANY."
The standard of review for a motion for summary judgment was generally stated in State ex rel. Zimmerman v. Tompkins (1996),75 Ohio St.3d 447, 448-449, as follows:
 Civ.R. 56(C) provides that before summary judgment may be granted, it must be determined that (1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made. State ex rel. Parsons v. Fleming (1994), 68 Ohio St.3d 509, 511, 628 N.E.2d 1377, 1379, citing Temple v. Wean United, Inc. (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 472, 364 N.E.2d 267, 274.
* * *
 Summary judgment is appropriate where the nonmoving party does not produce evidence on any issue for which that party bears the burden of production at trial. Wing v. Anchor Media, Ltd. of Texas (1991), 59 Ohio St.3d 108, 570 N.E.2d 1095, paragraph three of the syllabus; State ex rel. Morley v. Lordi (1995), 72 Ohio St.3d 510, 513, 651 N.E.2d 937, 940. When a motion for summary judgment is made and supported as provided in Civ.R. 56, the nonmoving party may not rest on the mere allegations of his pleading, but his response, by affidavit or as otherwise provided in Civ.R. 56, must set forth specific facts showing that there is a genuine triable issue. Civ.R. 56(E); Jackson v. Alert Fire Safety Equip., Inc. (1991), 58 Ohio St.3d 48, 52, 567 N.E.2d 1027, 1031. (Emphasis added.)
Also see Celotex v. Catrett (1986), 477 U.S. 317,106 S.Ct. 2548, 91 L.Ed.2d 265.
Subsequent to Tompkins, in the case of Kulch v. StructuralFibers, Inc. (1997), 78 Ohio St.3d 134, 144-145, the Ohio Supreme Court limited the third paragraph of the syllabus ofWing, supra, by reasserting reliance on Dresher v. Burt (1996),75 Ohio St.3d 280, 293:
 "[A] party seeking summary judgment, on the ground that the nonmoving party cannot prove its case, bears the initial burden of informing the trial court of the basis for the motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential element(s) of the nonmoving party's claims. The moving party cannot discharge its initial burden under Civ.R. 56 simply by making a conclusory assertion that the nonmoving party has no evidence to prove its case. Rather, the moving party must be able to specifically point to some evidence of the type listed in Civ.R. 56(C) which affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claims. If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied. However, if the moving party has satisfied its initial burden, the nonmoving party then has a reciprocal burden outlined in Civ.R. 56(E) to set forth specific facts showing there is a genuine issue for trial and, if the nonmovant does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party." (Footnote omitted; Italicization in original.)
We also note that our review of the granting of the motion for summary judgment ruling is de novo. Didier v. Johns (1996),114 Ohio App.3d 746; Koos v. Cent. Ohio Cellular Inc. (1994),94 Ohio App.3d 579.
Appellants assert that summary judgment should not have been granted for three reasons: (1) the circumstances of the collision in the sudden appearance of the parked van in the lane traveled by plaintiffs, which danger was not discernable by plaintiffs until the vehicle in front of theirs swerved away at the last minute to avoid the van, which action by the unknown driver deprived plaintiffs of sufficient time to prevent the collision with the van, negates plaintiffs' liability for the collision as a matter of law; (2) the comparative negligence of other drivers or persons [to-wit, Campbell parking the van on the highway, and improper inspection and/or maintenance of the van by its owners] negates the negligence of Mr. Murray, and the comparative negligence of Campbell in not pulling the van to the side of the road onto the inside berm adjoining the high speed lane of traffic; and, (3) the trial court should not have ruled upon the motion for summary judgment due to the belief that plaintiffs had not completed discovery and had requested time for such additional discovery pursuant to Civ.R. 56(F). These subarguments will be addressed out of the order presented by appellants so as to permit a more logical review of the issues.
As to the third subargument, it is noted that the trial court permitted plaintiffs-appellants extensions of time so as to complete discovery on at least three occasions after the motion for summary judgment was filed and before the filing of the plaintiffs' brief in opposition to that dispositive motion. The final extension of time expired on February 2, 1998, the same date plaintiffs filed their brief in opposition to the motion for summary judgment. At the time the court ruled on the motion for summary judgment (April 9, 1998), there was no motion pursuant to Civ.R. 56(F) pending before the court seeking additional time to conduct further discovery with which to oppose summary judgment. For appellants to complain that they needed time to complete discovery, yet not to have informed the court of such difficulties subsequent to February 2, 1998, and prior to the ruling on the dispositive motion and after having received service copies of the briefs presented by defendants, is without merit.
As to the first subargument presented by appellants, it is clear that an operator of a motor vehicle is obligated to maintain an assured clear distance between his vehicle and another vehicle in his lane of traffic. This duty is memorialized in R.C. 4511.21 (A), which states in pertinent part that ". . . no person shall drive any motor vehicle *** in and upon any street or highway at a greater speed than will permit the person to bring it to a stop within the assured clear distance ahead." A person violates that statute when a four-part test is satisfied, namely, if a driver demonstrates that he collided with an object which: (1) was ahead of him in his path of travel; (2) was stationary or moving in the same direction as the driver; (3) did not suddenly appear in the driver's path; and, (4) was reasonably discernible. SeePond v. Leslein (1995), 72 Ohio St.3d 50, 52. A violation of this statute is negligence per se. Id. at 53. However, a finding of negligence is not equivalent to a finding of liability. Hitchens v. Hahn (1985), 17 Ohio St.3d 212, 214. Applicable defenses, such as the doctrine of "sudden emergency" contributing to an unavoidable accident, can still be raised by a motorist to defeat liability. 72 Ohio St.3d at 53.
In the case sub judice, the first and second elements for a violation of R.C. 4511.21(A) are not in question.
As to the interrelated elements of sudden emergency and discernability of the hazard, we are directed to the factually similar case of Gatton v. F.J. Egner Son, Inc. (Tuscawaras, 1946), 79 Ohio App. 358, in which a motorist ahead of plaintiff's vehicle suddenly swerved to another lane of traffic to avoid striking an unlighted truck parked on the highway on a dark and rainy night, leading to the plaintiff's vehicle colliding with the rear of the parked truck. In Gatton, the court affirmed the dismissal of the complaint upon concluding that plaintiff had violated the assured clear distance statute in effect at the time:
 "1. A driver of an automobile violates the 'assured clear distance ahead' provision of Section 6307-21, General Code, when he operates his automobile so close behind a motor vehicle being operated in the same direction on the highway that, when such preceding vehicle suddenly swerves to the left to avoid striking an unlighted truck parked in the highway immediately ahead, his automobile collides with the rear of such truck.
 "2. In such a case, the fact that the intervening motor vehicle obscures the view of the driver of the automobile following in the same lane of travel does not constitute a justifiable legal excuse for making such provision of the statute inapplicable."
Id. at syllabus.
The Gatton reasoning, without being cited as such, was apparently utilized by the Ohio Supreme Court in Cox v. Polster
(1963), 174 Ohio St. 224, 226-227:
 "Thus, in the present case, if the car between the plaintiff and defendant, instead of swerving to avoid plaintiff's stopped car, had itself stopped, there would be no question that defendant would have had the duty to have his car under such control that he could bring it to a stop without colliding with the middle car, and his failure to do so would have constituted a violation of the assured-clear-distance statute. Defendant was obligated to maintain an assured clear distance between his car and the car immediately in front of him, and it was his duty to be able to stop within such distance.
 "Clearly, since defendant was under the duty to have his car under such control that he could stop if the car immediately in front of him came to a sudden stop, the swerving by the driver of such car out of its lane of traffic to avoid a car which came to a stop in front of him did not create such a sudden emergency or a cutting down of the assured clear distance in relation to plaintiff's stopped car as would relieve defendant from compliance with the assured-clear-distance statute. In fact when the middle car swerved out of line the distance between the car operated by defendant and the car immediately ahead was increased.
 "Where three motor vehicles are proceeding in the same direction in the same lane of traffic, the fact that the first car comes to a sudden stop causing the second car to swerve out of its lane of traffic does not create a sudden emergency as to the third car so as to relieve the driver thereof of from compliance with the assured-clear-distance statute in relation to the stopped first car."
Also see Coronet Ins. Co. v. Richards (Franklin, 1991), 76 Ohio App.3d 578,584; J.C. Penney Ins. Co. v. Abbington (Franklin, 1984), 14 Ohio App.3d 26, 28; State v. Kasischke (August 26, 1982), Montgomery App. No. 7761, unreported, 1982 WL 3787, at 4.
As to the issue of discernability of the hazard, the Ohio Supreme Court also stated:
 "An automobile, van, or truck stopped on a highway in a driver's path during daylight hours is, in the absence of extraordinary weather conditions, a reasonably discernable object as a matter of law."
Smiddy v. The Welding Party, Inc. (1987), 30 Ohio St.3d 35, paragraph two of the syllabus.
The record on appeal contains no indication that the weather conditions were extraordinary on the date of the accident. In fact, the police report indicates that there was no adverse weather, the road conditions were dry, the daylight was dusk, the road was straight and level. Accordingly, as a matter of law, the parked van on the highway (with emergency flashers activated, on level and straight dry roadway, at dusk) in the plaintiffs' path was discernable. Id.
Thus, the sudden emergency of the unknown car ahead of plaintiffs' swerving out of the lane of traffic does not constitute an avoidance of the plaintiffs' duty to maintain an assured clear distance ahead of his vehicle. Cox v. Polster,supra; Gatton v. F.J. Enger Sons, Inc., supra.
Turning to the second, and final, subargument, we note that apart from presenting a pack of itemized repair and regular maintenance statements for the vehicle in question, there is no evidence or testimony that any of the pre-collision mechanical problems or maintenance contributed to the mechanical problem experienced by the van on the date of the accident or that such pre-collision repair/maintenance should have alerted the owners of the van to the possibility of the mechanical problem which affected the van on the date of the collision. Accordingly, the failure to demonstrate a genuine issue of fact on these maintenance/repair issues renders this portion of the subargument to be without merit. However, the issue of Campbell's comparative negligence in not bringing the stricken van to a stop off the traveled portion of the highway on the inside berm adjoining the innermost high speed lane, or whether it was impossible for Campbell to have brought the van to a stop on the inside berm, is a genuine issue of material fact. A similar set of facts and argument on the applicability of R.C. 4511.66[6] was dealt with in Smiddy v. Wedding Party, Inc.,supra at 37-38:
 "Appellee also maintains that Hesketh {the disabled van's driver} violated R.C. 4511.66 and was therefore negligent. Although R.C. 4511.66 is a highway safety statute, it does not provide for an absolute prohibition against stopping, parking, or leaving a vehicle standing on the traveled portion of a highway. Rather, doing so is prohibited only if it is practicable to stop, park, or leave the vehicle off the traveled portion of the highway. Further, the statute exculpates the driver if it is impossible to avoid stopping and temporarily leaving the disabled vehicle in such position. Therefore, negligence does not automatically follow from the fact that a disabled vehicle is stopped on the traveled portion of a highway. Batesole v. Stratford (C.A.6, 1974), 505 F.2d 804; Lester v. John R. Jurgensen Co. (C.A.6, 1968), 400 F.2d 393, 46 O.O.2d 230.
 "Appellants argue that R.C. 4511.66 is inapplicable to the case sub judice because it was 'impossible to avoid stopping and temporarily leaving the disabled vehicle *** [on the traveled portion of the highway].' Id. We think an issue of fact exists. Hesketh admitted in his deposition that other vehicles pulled out from behind him and went around the van as it was coasting to a stop. Construing the facts most strongly in appellee's favor, reasonable minds could conclude from this statement that Hesketh might have pulled his van off the traveled portion of the highway.
 "Therefore, we hold that the issue of whether R.C. 4511.66 applies to the case sub judice should not have been disposed of by summary judgment." (Italicization in the original; footnote omitted.) {Explanatory note added to original.}
In the case sub judice, as was the evidence in Smiddy, there was evidence demonstrating that motorists avoided the stricken van as it slowed and after it was stopped. Also, the fact that Campbell attempted to merge toward the right side berm of the highway from the innermost high speed lane begs the question as to why, if the van was slowing due to a loss of power and traffic was making it difficult to continue merging to the right, Campbell did not simply choose the seemingly simpler option of pulling the van off the highway onto the berm (to his immediate left) directly adjoining the innermost high speed lane of traffic. This comparative negligence of Campbell remains a genuine issue of fact to be decided by the fact-finder.
Having determined that a portion of the second subargument is well taken, we conclude that the granting of summary judgment was improper.
Assignment affirmed.
Judgment reversed and remanded.
This cause is reversed and remanded for further proceedings consistent with the opinion herein.
It is ordered that appellant recover of appellee his costs herein taxed.
It is ordered that a special mandate issue out of this Court directing said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate procedure.
 _______________________________ TIMOTHY E. McMONAGLE, P.J.
 _______________________________ KENNETH A. ROCCO, J.
 _______________________________ JAMES D. SWEENEY, J.
N.B. This entry is an announcement of the court's decision. See App.R. 22(B), 22(D) and 26(A); Loc.App.R. 27. This decision will be journalized and will become the judgment and order of the court pursuant to App.R. 22(E) unless a motion for reconsideration with supporting brief, per App.R. 26(A), is filed within ten (10) days of the announcement of the court's decision. The time period for review by the Supreme Court of Ohio shall begin to run upon the journalization of this court's announcement of decision by the clerk per App.R. 22(E). See, also, S.Ct.Prac.R. II, Section 2(A)(1).
[1] The plaintiffs are: (1) Robert Murray, Jr., and the daughters of Mr. Murray, (2) Robin Murray and (3) Chelsea Murray.
[2] The defendants are: (1) ROC Lakeside, Inc., dba Holiday Inn Lakeside; (2) Holiday Inn Lakeside City Center; (3) Olnick Organization; (4) Newton Campbell.
[3] The mechanical problem was described as no acceleration when the accelerator peddle was depressed, as if the vehicle was in neutral gear; the vehicle just coasted along without any power reaching the transmission from the engine. Deposition of Mr. Campbell, at 17.
[4] The record does not reflect that this deposition was otherwise filed with the court.
[5] The order appealed from is not the ruling on the motion for reconsideration.
[6] R.C. 4511.66, Prohibition Against Parking on Highways, provides the following:
 "Upon any highway outside a business or residence district no person shall stop, park, or leave standing any vehicle, whether attended or unattended, upon the paved or main traveled part of the highway if it is practicable to stop, park, or so leave such vehicle off the paved or main traveled part of said highway. In every event a clear and unobstructed portion of the highway opposite such standing vehicle shall be left for the free passage of other vehicles, and a clear view of such stopped vehicle shall be available from a distance of two hundred feet in each direction upon such highway.
 "This section does not apply to the driver of any vehicle which is disabled while on the paved or improved or main traveled portion of a highway in such manner and to such extent that it is impossible to avoid stopping and temporarily leaving the disabled vehicle in such position."