[This opinion has been published in *Ohio Official Reports* at 79 Ohio St.3d 231.]

LEWIS, APPELLANT, *v*. TRIMBLE, ADMR., BUREAU OF WORKERS'
COMPENSATION, ET AL., APPELLEES.

[Cite as *Lewis v. Trimble*, 1997-Ohio-393.]

*Workers' compensation—Application and requirements of R.C. 4123.84 with regard to "flow-through" or residual medical conditions—Self-insured employer makes a conclusive determination to allow a claim for a residual or "flow-through" condition, when.*

1.  R.C. 4123.84 requires that written notice of the specific part or parts of the body claimed to have been injured must be given within two years of the time the claimant knew or should have known of the nature and seriousness of the residual or "flow-through" condition and its causal relation to his or her industrial injury. (*Clementi v. Wean United, Inc.* [1988], 39 Ohio St.3d 342, 530 N.E.2d 909, modified.)

2.  A self-insured employer makes a conclusive determination to allow a claim for a residual or "flow-through" condition when it accepts the condition as part of the claim, even where such acceptance occurs after the limitations period set forth in R.C. 4123.84 has run. (*State ex rel. Baker Material Handling Corp. v. Indus. Comm.* [1994], 69 Ohio St.3d 202, 631 N.E.2d 138, paragraph one of the syllabus, followed.)

(No. 95-2427—Submitted March 5, 1997—Decided July 23, 1997.)

APPEAL from the Court of Appeals for Greene County, No. 95-CA-37.

————————————

{¶ 1} On May 31, 1987, claimant-appellant, Carles B. Lewis, received an injury in the course of, and arising out of, his employment with appellee, Dayton Power & Light Company, a self-insured employer ("employer"). An application for benefits was filed with the Bureau of Workers' Compensation and the claim

was allowed for "recurrent right ventral hernia." Thereafter, compensation and benefits were paid by the employer for this condition.

{¶ 2} On October 1, 1987, claimant filed an application for Social Security disability benefits with the Department of Health and Human Services. In conjunction with those proceedings, a psychological evaluation was conducted by William R. Arnold, Ph.D., on March 24, 1988, at the request of claimant's counsel. Dr. Arnold's primary diagnosis was that claimant suffers from "Adjustment Disorder with depressed mood moderate," noting that "the current anxiety and depressive symptoms are primarily reactive to his deteriorating physical status."

{¶ 3} On February 25, 1992, claimant filed a motion with the Industrial Commission of Ohio ("commission") requesting that "the instant claim be additionally recognized for the [psychological] condition of dysthymia pursuant to Dr. Arnold's report of September 6, 1990." Claimant filed another motion on August 5, 1992, requesting an allowance for major depression and panic disorder with agoraphobia.

{¶ 4} In response to claimant's motions, the employer had claimant examined by Dr. Richard H. Clary, M.D. In his report, dated September 25, 1992, Dr. Clary noted that claimant "saw a psychologist, Dr. Arnold in 1988 for Social Security disability and * * * that since he has been unable to work in 1987, he has felt anxious and depressed." Dr. Clary opined that claimant "has been suffering from major depression and panic disorder for over 2 years * * *. [His] psychiatric problems are permanent at this time and he is unable to return to his former employment."

{¶ 5} On November 16, 1992, the employer filed a motion which stated:

"Now comes the employer and indicates that they [*sic*] will accept the condition diagnosed by Dr. Clary as indicated in the attached report. The employer further requests that an order be placed in the claim indicating that as a result of the

conditions in this claim including the accepted depression, the claimant's condition is permanent."

**{¶ 6}** The employer alleges that subsequent to filing this motion, it discovered the existence and content of Dr. Arnold's 1988 report rendered in conjunction with the proceedings on claimant's request for Social Security disability benefits. It claims that "[w]hen the allowance issue was first heard by the District Hearing Officer, * * * the statute of limitations defense [*i.e.*, that claimant's request for an additional allowance was time-barred under R.C. 4123.84] was raised. The defense was asserted at each administrative level thereafter." Claimant does not dispute these allegations.

**{¶ 7}** The claim was allowed administratively for the condition "major depression and panic disorder with agoraphobia," and thereafter appealed to the Greene County Court of Common Pleas. After the filing of cross-motions for summary judgment, the trial court found that claimant's claim for additional psychological conditions is barred by the two-year limitations period set forth in R.C. 4123.84.

**{¶ 8}** The court of appeals affirmed the judgment of the trial court, finding that the employer "is not estopped from asserting that the [claimant's] claim is time-barred under R.C. 4123.84 although it may have acquiesced in [claimant's] claim *after* the limitation period expired because the limitation period invokes the subject matter jurisdiction of the Industrial Commission." (Emphasis *sic*.)

**{¶ 9}** The cause is now before this court pursuant to the allowance of a discretionary appeal.

_____

*E. S. Gallon & Associates* and *James R. Piercy*, for appellant.

*Dunlevey, Mahan & Furry, Gary W. Auman, William H. Barney III* and *William P. Allen*, for appellee Dayton Power & Light Company.

*Stewart Jaffy & Associates Co., L.P.A., Stewart R. Jaffy* and *Marc J. Jaffy*, urging reversal for *amici curiae,* Ohio AFL-CIO and Ohio Academy of Trial Lawyers.

_____

**ALICE ROBIE RESNICK, J.**

{¶ 10} This appeal raises two important issues under Ohio's workers' compensation law. The first issue involves the application and requirements of R.C. 4123.84 with regard to "flow-through" or residual medical conditions. The second issue is whether a self-insured employer who accepts a "flow-through" or residual condition as allowed, after the two-year limitations period set forth in R.C. 4123.84 has run, has conclusively granted that condition as part of the claim.

I

*R.C. 4123.84 and Residual Conditions*

{¶ 11} R.C. 4123.84[1] provides:

_____

1. R.C. 4123.84 reads, in its entirety, as follows:

"(A) In all cases of injury or death, claims for compensation or benefits for the specific part or parts of the body injured shall be forever barred unless, within two years after the injury or death:

"(1) Written notice of the specific part or parts of the body claimed to have been injured has been made to the industrial commission or the bureau of workers' compensation;

"(2) The employer, with knowledge of a claimed compensable injury or occupational disease, has paid wages in lieu of compensation for total disability;

"(3) In the event the employer is a self-insuring employer, one of the following has occurred:

"(a) Written notice of the specific part or parts of the body claimed to have been injured has been given to the commission or bureau or the employer has furnished treatment by a licensed physician in the employ of an employer, provided, however, that the furnishing of such treatment shall not constitute a recognition of a claim as compensable, but shall do no more than satisfy the requirements of this section;

"(b) Compensation or benefits have been paid or furnished equal to or greater than is provided for in sections 4123.52, 4123.55 to 4123.62, and 4123.64 to 4123.67 of the Revised Code.

"(4) Written notice of death has been given to the commission or bureau.      "(B) The bureau shall provide printed notices quoting in full division (A) of this section, and every self-insuring employer shall post and maintain at all times one or more of the notices in conspicuous places in the workshop or places of employment.      "(C)  The  commission  has  continuing jurisdiction as set forth in section 4123.52 of the Revised Code over a claim which meets the requirement of this section, including jurisdiction to award compensation or benefits for loss or impairment of bodily functions developing in a part or parts of the body not specified pursuant to

"(A) In all cases of injury or death, claims for compensation or benefits for the specific part or parts of the body injured shall be forever barred unless, within two years after the injury or death:

"(1) Written notice of the specific part or parts of the body claimed to have been injured has been made to the industrial commission or the bureau of workers' compensation;

"* * *

"(3) In the event the employer is a self-insuring employer, one of the following has occurred:

"(a) Written notice of the specific part or parts of the body claimed to have been injured has been given to the commission or bureau * * *;

"* * *

"(C) The commission has continuing jurisdiction as set forth in section 4123.52 of the Revised Code over a claim which meets the requirement of this section, including jurisdiction to award compensation or benefits for loss or impairment of bodily functions developing in a part or parts of the body not

---

division (A)(1) of this section, if the commission finds that the loss or impairment of bodily functions was due to and a result of or a residual of the injury to one of the parts of the body set forth in the written notice filed pursuant to division (A)(1) of this section.

"(D) Any claim pending before the administrator, the commission, or a court on December 11, 1967, in which the remedy is affected by this section is governed by this section.

"(E) Notwithstanding the requirement that the notice required to be given to the bureau, commission, or employer under this section is to be in writing, the bureau may accept, assign a claim number, and process a notice provided by any method of telecommunication. Immediately upon receipt of the telecommunicated notice, the bureau shall send a written notice to the employer of the bureau's receipt of the telecommunicated notice. Within fifteen days after receipt of the notice, the employer may in writing either verify or not verify the telecommunicated notice. If the bureau does not receive the written notification from the employer or receives a written notification verifying the telecommunicated notice within such time period, the claim is validly filed and such telecommunicated notice tolls the statute of limitations in regard to the claim filed and is considered to meet the requirements of written notice required by this section.

"(F) As used in division (A)(3)(b) of this section, 'benefits' means payments by a self-insuring employer to, or on behalf of, an employee for a hospital bill, a medical bill to a licensed physician or hospital, or an orthopedic or prosthetic device."

specified pursuant to division (A)(1) of this section, if the commission finds that the loss or impairment of bodily functions was due to and a result of or a residual of the injury to one of the parts of the body set forth in the written notice filed pursuant to division (A)(1) of this section."

{¶ 12} R.C. 4123.52 provides:

"No modification or change nor any finding or award in respect of any claim shall be made with respect to disability, compensation, dependency, or benefits, after six years from the date of injury * * * unless written notice of claim for the specific part or parts of the body injured or disabled has been given as provided in section 4123.84 or 4123.85 of the Revised Code, and the commission shall not make any modification, change, finding, or award which shall award compensation for a back period in excess of two years prior to the date of filing application therefor. This section does not affect the right of a claimant to compensation accruing subsequent to the filing of any such application, provided the application is filed within the time limit provided in this section."

{¶ 13} In *Clementi v. Wean United, Inc.* (1988), 39 Ohio St.3d 342, 530 N.E.2d 909, this court sought to interpret the relationship between R.C. 4123.84 and 4123.52, and concluded that "[t]he 1967 amendments to R.C. 4123.84 [H.B. No. 268, 132 Ohio Laws, Part I, 1432-1433, effective December 11, 1967] and 4123.52 apparently were made to expand the notice requirements and therefore the statute of limitations requirements to residual or flow-through conditions." *Id.* at 346, 530 N.E.2d at 913. We held that "R.C. 4123.84 requires a claimant to file a motion for an additional allowance within two years of the time the claimant knew or should have known of the additional condition." *Id.* at syllabus.

{¶ 14} Claimant does not challenge *Clementi*'s application of R.C. 4123.84's notice requirements to residual or "flow-through" conditions. Instead, claimant seeks a clarification of *Clementi*'s holding, particularly with reference to

identifying those characteristics of a claimant's residual condition and his or her knowledge thereof which will cause the statutory period to start to run.

{¶ 15} In considering claimant's request, it has become apparent that *Clementi*'s holding has generated substantial confusion. In a literal sense, *Clementi* seems to impose upon a claimant requirements that are either not imposed under R.C. 4123.84 or directly conflict with other statutory provisions and case law.

{¶ 16} The syllabus in *Clementi* begins with the phrase: "R.C. 4123.84 requires a claimant to file * * *." However, R.C. 4123.84 requires only that "[w]ritten notice * * * has been made" or that "[w]ritten notice * * * has been given." R.C. 4123.84(A)(1) and (A)(3)(a). The operative language was the same under the 1967 amendments, and has remained unchanged through five subsequent amendments. 133 Ohio Laws, Part II, 1621; 136 Ohio Laws, Part I, 1173; 137 Ohio Laws, Part II, 3960-3961; 143 Ohio Laws, Part II, 3378; 145 Ohio Laws, Part II, 3185. In focusing its attention on a number of lower court decisions, the *Clementi* court overlooked former R.C. 4123.512(A) (now R.C. 4123.511[A]), which expressly provided that "[i]f the administrator shall receive from a person other than the claimant written information indicating that an injury * * * has occurred * * *, [t]he receipt of such information and such notice by the administrator shall be considered an application for compensation under section 4123.84 * * * of the Revised Code." 136 Ohio Laws, Part I, 1150. Also overlooked was our prior decision in *Mewhorter v. Ex-Cell-O Corp.* (1986), 23 Ohio St.3d 13, 23 OBR 11, 490 N.E.2d 610. There we held that:

"Pursuant to R.C. 4123.84, notice of a claim by a third party to the Bureau of Workers' Compensation referring to a prior claim, and filed within two years of the occurrence of the injury underlying such prior claim, gives the court jurisdiction over the subsequent claim." *Id.* at syllabus.

**{¶ 17}** The syllabus in *Clementi* goes on to require a claimant to file "a motion." As astutely observed in Fulton, Ohio Workers' Compensation Law (1991) 93, Section 5.7:

"The use of the term 'motion' is unfortunate because it causes confusion. A motion, or C-86, is an intra-agency application form designed by the Bureau for parties to use in seeking a determination on any matter. As [a] notice statute[ ], R.C. * * * 4123.84 * * * merely require[s] notice of the body parts affected by a claimed residual injury. The statute does not require the giving of notice on any particular form or on any particular blank of a form [*Toler v. Copeland Corp.* (1983), 5 Ohio St.3d 88, 5 OBR 140, 448 N.E.2d 1386], and technical rules of procedure should not be allowed to defeat an otherwise valid claim. [*State ex rel. Gatlin v. Yellow Freight Sys., Inc.* (1985), 18 Ohio St.3d 246, 18 OBR 302, 480 N.E.2d 487; *W.S. Tyler Co. v. Rebic* (1928), 118 Ohio St. 522, 161 N.E. 790.] *Clementi*'s use of the word 'motion' does not mandate any greater specificity for notice of residual injuries than R.C. * * * 4123.84 * * * generally require[s] for the original injury."

**{¶ 18}** It is difficult to ascertain from the opinion in *Clementi* whether this court really sought to impose the requirement of filing a motion under R.C. 4123.84, or was merely tailoring its holding to reflect the facts of the case. The court did, however, emphasize the last sentence of the first paragraph of R.C. 4123.52: "This section does not affect the right of a claimant to compensation accruing subsequent to the filing of any such application; provided such application is filed within the applicable time limit as provided in this section." *Id.*, 39 Ohio St.3d at 343, 530 N.E.2d at 910.

**{¶ 19}** This seems to suggest that the *Clementi* court drew support from the term "application" in R.C. 4123.52 to require the filing of a "motion" under R.C. 4123.84 in the case of residual conditions. However, even if R.C. 4123.52 could somehow be construed to require the filing of an application under R.C. 4123.84,

and even if the term "application" envisions the filing of a motion in the case of residual conditions, it is clear from reading R.C. 4123.52 *in pari materia* with R.C. 4123.84 and 4123.511(A) (formerly R.C. 4123.512[A]), that any written information given to the commission or bureau indicating that an injury has occurred to a specific part or parts of the body claimed to have been injured constitutes an "application," and thus "notice," under R.C. 4123.84.

{¶ 20} In fact, this was precisely the issue in *Mewhorter,* 23 Ohio St.3d 13, 23 OBR 11, 490 N.E.2d 610. In that case, claimant was injured on July 30, 1976. His claim for injury to his right arm, shoulder, and hand was denied. He was admitted to the hospital and an anterior discectomy of the C 6-7 extruded disc was performed. On April 17, 1978, the bureau received a fee bill and medical reports regarding the disc surgery from claimant's self-insured employer, who had received the information from claimant's surgeon. However, claimant did not file a motion for recognition of the spinal injury until February 22, 1979. Thus, the fee bill and attachments were filed within two years from the date of injury, but the motion was not. The commission denied the claim for the reason that it had not been filed as to the spinal injury within two years of the date of the industrial accident as mandated by R.C. 4123.84. We reversed, finding that upon "[r]eading [former] R.C. 4123.512 *in pari materia* with R.C. 4123.84 * * *, there can be no doubt that the bill and attachments, submitted by Dr. Lin to claimant's employer and subsequently forwarded to the Bureau of Workers' Compensation within the limitations period, were adequate for jurisdictional purposes." *Id.*, 23 Ohio St.3d at 15, 23 OBR at 13, 490 N.E.2d at 612.

{¶ 21} Next, the motion (or notice) that *Clementi* requires a claimant to file is one "for an additional allowance." *Id*. at syllabus. This is misleading because it implies that more is required under R.C. 4123.84(A)(1) than "[w]ritten notice of the specific part or parts of the body claimed to have been injured." It tends to indicate, in a strict sense, that in order to comply with R.C. 4123.84(A)(1), the

notice must refer to the specific nature of the medical condition or impairment. However, in *Dent v. AT&T Technologies, Inc.* (1988), 38 Ohio St.3d 187, 527 N.E.2d 821, syllabus, this court specifically held:

"An injured employee is required to give written notice of the specific part or parts of the body claimed to have been injured within two years after the injury, but is not required to include in such notice the specific nature of the physical condition or impairment resulting from such injury. (R.C. 4123.84 and 4123.52, construed.)"

{¶ 22} *Clementi*'s holding required the claimant to file a motion for an additional allowance "within two years of the time that claimant knew or should have known of the additional condition." 39 Ohio St.3d 342, 530 N.E.2d 909, syllabus. In using the term "additional" to qualify the term "condition," the court misspoke. An additional condition is different from a residual or flow-through condition. An additional condition is a new condition occurring in a body part for which proper written notice has already been given in the original claim. Additional conditions, by definition, are not subject to the two-year limitations period set forth in R.C. 4123.84. *Dent, supra*, 38 Ohio St.3d at 189, 527 N.E.2d at 824. Since the *Clementi* court acknowledged that the purpose of the 1967 amendments to R.C. 4123.84 was "to expand the notice requirements and therefore the statute of limitations requirements to residual or flow-through conditions," 39 Ohio St.3d at 346, 530 N.E.2d at 913, *i.e.*, conditions developing in a body part not originally alleged to have been injured, *Dent, supra*, 38 Ohio St.3d at 189, 527 N.E.2d at 824, we cannot accept that *Clementi*'s intent was to overrule *Dent*.

{¶ 23} Also, although *Clementi* adopted the "knew or should have known" test, it did not adequately inform as to what it is that the claimant must or should be aware of to start the running of the limitations period. In other words, what does it mean to have knowledge or its equivalent of "the condition"?

**{¶ 24}** Claimant argues that the two-year limitations period under R.C. 4123.84 should not begin to run until such time as "(1) There is a specific diagnosis made of the psychiatric or medical condition at issue; (2) The injured worker is informed of that diagnosis; and (3) The injured worker is informed that the medical or psychiatric condition is causally related to the preceding industrial injury." The employer argues that the period commences at the time claimant knew or should have known that "his psychological problems, or symptoms, were related to his industrial injury. The focus is on the part, or parts, of the body not the 'nature' or diagnosis of the problem."

**{¶ 25}** As with many competing positions, the answer lies somewhere in between. "[T]he purpose of the initial filing period of R.C. 4123.84 '* * * is to enable the employers to protect themselves by prompt investigation of the injuries. It is primarily a notice requirement.'" *Mewhorter, supra*, 23 Ohio St.3d at 14, 23 OBR at 12, 490 N.E.2d at 611, quoting Nackley, The Initial Filing Period in Ohio Workers' Compensation Law (1980), 7 N.Ky.L.Rev. 33, 34. The statute contains a number of exceptions to the requirement for written notice, such as where a state-fund employer pays wages in lieu of total disability compensation, or a self-insured employer furnishes treatment or pays compensation or benefits. R.C. 4123.84(A)(2), (A)(3)(a) and (b). These exceptions are in the nature of waiver. "By paying compensation or benefits, the self-insurer is in effect waiving the two-year bar set forth in R.C. 4123.84, since the employer is put on notice of a possible claim." *Wargetz v. Villa Sancta Anna Home for the Aged* (1984), 11 Ohio St.3d 15, 17, 11 OBR 49, 51, 462 N.E.2d 1215, 1217. The exceptions, being in the nature of waiver, look to the actions of the employer.

**{¶ 26}** However, like most workers' compensation statutes of limitations, R.C. 4123.84 "merely dates the period from the time of injury, disability, or accident, saying nothing about time of [claimant's] discovery of the nature of the condition. Yet the great majority of the courts have been sufficiently impressed

with the acute unfairness of a literal application of this language to read in an implied condition suspending the running of the statute until by reasonable care and diligence it is discoverable and apparent that a compensable injury has been sustained.

{¶ 27} "The number of jurisdictions that are still capable of destroying compensation rights for failure to file a claim at a time when its existence could not reasonably have been known has dwindled to three or four at the most, all under statutes dating the period from time to [*sic, of*] accident rather than time of injury." 2B Larson, Workmen's Compensation Law (1996) 15-254 to 15-257, Section 78.41(b).

{¶ 28} Thus, the "knew or should have known" standard was adopted in *Clementi* in an apparent attempt to temper the literal harshness of R.C. 4123.84's bar. It is a judicial concession that a literal application of the statute oftentimes exacts the impossible of a claimant, demanding more of him or her than can reasonably be expected of a prudent person in asserting his or her rights.

{¶ 29} In *Edwards v. AT&T Technologies, Inc.* (1989), 42 Ohio St.3d 119, 537 N.E.2d 1305, claimant's workers' compensation claim was allowed for upper and lower back injuries sustained on February 10, 1976. On December 6, 1982, she requested an additional allowance for "depressive neurosis." However, more than two years prior to the filing of her motion, claimant had been examined by four doctors, whose reports noted "some distinct indications of functional overlay," "evidence of psychosomatic overlay," "a psychophysiological reaction," "conversional" symptoms, and "some conversion anxiety." *Id.*, 42 Ohio St.3d at 119, 537 N.E.2d at 1305.

{¶ 30} In applying *Clementi* to these facts, this court held that, although the four reports preceded claimant's motion by more than two years, "we are unconvinced that their references *to a possible psychiatric condition* were sufficient to put [claimant] on notice of a psychiatric condition *related to her industrial injury.*

Absent such evidence, we find [claimant's] application timely." (Emphasis added.) *Id.*, 42 Ohio St.3d at 120, 537 N.E.2d at 1306.

{¶ 31} *Edwards* accords with the overwhelming majority of courts which hold, in one form or another, that "[t]he time period for notice or claim does not begin to run until the claimant, as a reasonable person, should recognize the nature, seriousness, and probable compensable character of his or her injury or disease." 2B Larson, *supra*, at 15-206, Section 78.41(a).

{¶ 32} Since this standard is essentially one of due diligence, the focus properly rests upon the reasonableness of claimant's conduct under all the surrounding circumstances. This requires that all relevant factors bearing on the question of reasonableness be considered, including, but not limited to, the information available to claimant, his or her experience, education and intellectual functioning, and what he or she has been told or not told about the nature, seriousness, and probable compensable character of the condition.

{¶ 33} In this context, it becomes clear that whether or not claimant is informed of a specific diagnosis is not itself a determinative inquiry, but constitutes one factor to be considered. Thus, under a particular set of circumstances it may be properly found that the statute begins to run when the claimant is informed of a specific diagnosis. See, *e.g., Mikoch v. Sherwin-Williams Co.* (1988), 45 Ohio App.3d 1, 3, 544 N.E.2d 698, 700 (claimant "could [not] report an 'organic brain syndrome' before his doctors diagnosed it."); *Forster v. Ohio Bur. of Workers' Comp.* (1995), 102 Ohio App.3d 744, 658 N.E.2d 7 (limitations period held to commence when diagnosis of bilateral carpal tunnel syndrome was made, not when claimant previously experienced tingling in his hands).

{¶ 34} If we were to hold that the date of diagnosis can under no circumstances be the date the statute begins to run, we would effectively place the burden of diagnosis on the claimant. Indeed, this is what the court attempted to do in *McCurdy v. Mihm* (1993), 89 Ohio App.3d 363, 370, 624 N.E.2d 760, 765, when

it stated that "an injured employee can file for benefits before the statute has run [for dysthymia, a condition which cannot be diagnosed until two years has elapsed] by claiming a 'depression disorder not otherwise specified'—a DSM-3 claim that is clearly listed by the commission as available." Yet, there are more than three hundred diagnoses listed in the Diagnostic and Statistical Manual of Mental Disorders (3 Ed.1987) 509-515, Appendix H. "Plainly claimant should be expected to display no greater diagnostic skill than any other uninformed layperson confronted with the early symptoms of a progressive condition." 2B Larson, *supra*, at 15-268 to 15-269, Section 78.41(d).

{¶ 35} On the other hand, the date of diagnosis does not necessarily determine the date the statute begins to run. The limitations period may properly be found to commence before the claimant is informed of a specific diagnosis. Thus, the court in *McCurdy* was astute in its observation that "[a]ctual knowledge of a specific diagnosis is not required to commence the statute of limitations period." *Id.*, 89 Ohio App.3d at 369, 624 N.E.2d at 764. As well stated by the trial court in that case, " '[t]he fact that [claimant] found a doctor to put the label of "dysthymia" on his problem in 1989 does not change his own testimony that he knew of the problem within a few months of the [October 22, 1980] injury.' " *Id.* at 365, 624 N.E.2d at 762. "[I]t is not necessary for the claimant to know the exact diagnosis or medical name for the condition if he or she knows enough about its nature to realize that it is both serious and work-connected." 2B Larson, *supra*, at 15-271, Section 78.41(d).

{¶ 36} However, there are circumstances where the limitations period may remain tolled even after claimant is informed of a specific diagnosis. This can occur where the diagnosis is confusing or misleading, or where the claimant cannot be reasonably expected to know what the diagnosis means. See 2B Larson, *supra*, at 15-277 to 15-279, Section 78.41(d), and 15-283 to 15-286, Section 78.41(f).

**{¶ 37}** The limitations period may also remain tolled where, even though the claimant knows he or she is suffering from some condition, the claimant had no reason to be aware of the seriousness of the condition. "This feature is a salutary requirement, since any other rule would force employees to rush in with claims for every minor ache, pain, or symptom. So, if the claimant knows he or she has some shortness of breath, a back injury, or even a hernia, failure to file a claim promptly may be excused if claimant had no reason to believe the condition serious." *Id.* at 15-279 to 15-281, Section 78.41(e).

**{¶ 38}** Accordingly, we hold that R.C. 4123.84 requires that written notice of the specific part or parts of the body claimed to have been injured must be given within two years of the time the claimant knew or should have known of the nature and seriousness of the residual or "flow-through" condition and its causal relation to his or her employment.

**{¶ 39}** Applying this standard to the case *sub judice*, we find summary judgment to be inappropriate. Claimant was examined by Dr. Arnold in 1988 and not again until August or September 1990. Notice of a psychiatric condition was first given on February 25, 1992, when claimant filed his motion for allowance of dysthymia along with Dr. Arnold's report dated September 6, 1990. Thus, notice was given within two years of Dr. Arnold's second report, but not within two years of his first report. Accordingly, if claimant knew or should have known the nature, seriousness, and probable compensability of his psychiatric condition in 1988, his claim therefor is barred under R.C. 4123.84.

**{¶ 40}** If Dr. Arnold's 1988 report were the only evidence of record, we might very well be inclined to agree with the employer that claimant's 1992 request for allowance of dysthymia was time-barred. However, when this report was filed in his claim for Social Security disability in 1988, claimant was informed by the administrative law judge as follows:

"While I concede that the claimant undoubtedly experiences a degree of depression secondary to the functional limitations imposed by his physical impairment and his inability to work, I find no substantial longitudinal evidence of a mental impairment of independent significance. * * * [O]ther than the consultative examination conducted at the request of his attorney, he has not been referred for, or sought, psychological or psychiatric treatment. * * * Therefore, while I believe that the claimant may experience a degree of situational depression, I find no substantial evidence to establish that he has a mental impairment which significantly limits his functional capabilities."

{¶ 41} In contrasting his second evaluation of claimant in 1990 with that of 1988, Dr. Arnold testified at his deposition that "[i]n this particular instance because [claimant] appeared to be so distressed the second time I told him I really felt like he needed to get some help." Thereafter, claimant began treatment with a clinic called "Positive Focus" and, on October 25, 1990, started treatment with a Dr. Siddiqui. He was hospitalized in January 1991 and again in November 1991 because of suicidal ideation and, as of 1992, was seeing a psychiatrist once a month and a psychologist once a week.

{¶ 42} In light of this additional evidence, there remains a genuine issue of fact as to whether claimant knew or should have known of the seriousness of his condition before February 25, 1990.

{¶ 43} Accordingly, we reverse the judgment of the court of appeals insofar as it bears on this issue.

II

*Allowance of Time-Barred Residual Condition by Self-Insured Employer*

**{¶ 44}** Having found summary judgment in favor of the employer to be inappropriate, it remains to be determined whether summary judgment should have been entered in favor of claimant.

**{¶ 45}** In *State ex rel. Baker Material Handling Corp. v. Indus. Comm.* (1994), 69 Ohio St.3d 202, 631 N.E.2d 138, paragraph one of the syllabus, this court held:

"A self-insured employer who, subsequent to the initial allowance of a workers' compensation claim, certifies a medical condition as allowed on a 'Self Insured Semi-Annual Report of Claim Payments' (form C-174) has conclusively granted that additional condition as part of the claim."

**{¶ 46}** By its terms, *Baker* applies to the allowance of an "additional condition." However, we have no hesitation in applying *Baker* to the allowance of a residual condition as well. The primary basis for our holding in *Baker* was that the self-insured employer is the initial processing agent and adjudicator of *any* claim. *Id.* at 205, 631 N.E.2d at 142. Thus, it is irrelevant whether the condition certified is characterized as an initial injury or as an additional or residual condition.

**{¶ 47}** Equally irrelevant is the method by which the self-insurer allows the claim, whether it be by certifying the condition on a C-174 form, or by the more direct method of formally accepting the condition by motion, as occurred in this case. In either instance, the allowance stands because the initial determination of allowed conditions necessarily is made by the self-insurer. *Id.*, 69 Ohio St.3d at 206, 631 N.E.2d at 142.

**{¶ 48}** However, the employer argues that *Baker* should not apply where the residual condition has been accepted by the self-insurer after the claim becomes time-barred under R.C. 4123.84. According to the employer, the limitations bar in R.C. 4123.84 is jurisdictional in nature, and can be tolled only as expressly provided

in R.C. 4123.84.  Thus, the employer cannot waive the statutory bar by accepting the claim after the two-year period has expired.

{¶ 49} Claimant, on the other hand, argues that the limitations bar is not jurisdictional and, therefore, can be waived.  Accordingly, a self-insured employer who accepts a time-barred residual condition cannot subsequently withdraw that acceptance by alleging expiration of the limitations period.

{¶ 50} We begin our inquiry by examining our prior decisions in an effort to gain insight into whether and in what sense R.C. 4123.84 can be characterized as jurisdictional.  In *Indus. Comm. v. Kamrath* (1928), 118 Ohio St. 1, 9, 160 N.E. 470, 472-473, the following view was offered:

"The provisions of [R.C. 4123.84's predecessor, G.C. 1465-72a (108 Ohio Laws, Part I, 319, effective May 16, 1919)] are wholly negative.  That section confers no rights upon an injured employee or the dependents of a killed employee, but its whole effect is to limit rights elsewhere conferred upon them.  It is strictly a statute of limitations and limits alike the rights of the injured employees, the rights of dependents of killed employees, and the powers of the administrators of the fund."

{¶ 51} In *State ex rel. Carr v. Indus. Comm.* (1935), 130 Ohio St. 185, 4 O.O. 122, 198 N.E. 480, at paragraph one of the syllabus, this court held:  "The filing of a claim for compensation * * * within the time specified is a condition qualifying the right vested by the statute."  This holding was based upon the concept that where a statutory right is expressly conditioned upon its assertion before a certain deadline, the timeliness requirement is jurisdictional.

{¶ 52} Yet, in *Gregory v. Flowers* (1972), 32 Ohio St.2d 48, 53, 61 O.O.2d 295, 298, 290 N.E.2d 181, 185, this court characterized R.C. 4123.84 as a statute of limitations.  We further held that such statutes "are remedial in nature and may be generally classified as procedural legislation."  *Id*. at paragraph one of the syllabus.

{¶ 53} In *Mewhorter, supra*, we held that pursuant to R.C. 4123.84, notice of claim by a third party gives the court jurisdiction over the claim. In so holding, we distinguished R.C. 4123.84 "'in purpose from general statutes of limitations which serve to protect against "stale claims" or "faded memories" and to gain the "repose" of society.'" *Id.*, 23 Ohio St.3d at 14-15, 23 OBR at 12, 490 N.E.2d at 611, quoting Nackley*, supra*, 7 N.Ky.L. Rev. at 34.

{¶ 54} These cases serve to illustrate that the characterization of R.C. 4123.84 varies greatly according to the circumstances and the time in which it is used. As originally enacted in 1919, G.C. 1465-72a was purely a claims statute. Claims were forever barred unless, within two years after the injury, "application" was made to the commission or self-insured employer. 108 Ohio Laws, Part I, 319. The statute contained no exceptions excusing lateness of application. Thereafter, the statute underwent a series of amendments, the cumulative effect of which was to change the nature of the statute from one requiring that application be made to one requiring that written notice be given, and to provide for certain exceptions in the nature of waiver. Compare 108 Ohio Laws, Part I, 319, with 130 Ohio Laws 939-940.

{¶ 55} The 1967 amendments, 132 Ohio Laws, Part I, 1433, and as clarified in Am. H.B. No. 1, 133 Ohio Laws, Part II, 1622, effective March 18, 1969, added the following provision to R.C. 4123.84:

"Any claim pending before the administrator of the bureau of workmen's compensation, a board of review, the industrial commission, or a court on December 11, 1967, in which the *remedy is affected* by section 4123.84 of the Revised Code shall be governed by the terms of this section." (Emphasis added.)

{¶ 56} Moreover, even were we to assume that R.C. 4123.84 bears the "jurisdictional" label, this court has attached that label to so many workers' compensation issues that it can scarcely be said that the term has any enduring significance to the issue of waiver. The court has described as jurisdictional the

issues of situs of injury, *Indus. Comm. v. Weigand* (1934), 128 Ohio St. 463, 191 N.E. 696, and *Miles v. Elec. Auto-Lite Co.* (1938), 133 Ohio St. 613, 617, 11 O.O. 339, 341, 15 N.E.2d 532, 535; whether the employer is self-insuring and whether it regularly employs three or more employees, *id.;* whether there is a causal connection between the employment and the injury, *Kaiser v. Indus. Comm.* (1940), 136 Ohio St. 440, 444, 17 O.O. 22, 24, 26 N.E.2d 449, 452; and even the broad question of whether claimant has a right to participate or to continue to participate in the fund. *Valentino v. Keller* (1967), 9 Ohio St.2d 173, 38 O.O.2d 412, 224 N.E.2d 748, syllabus.

{¶ 57} Indeed, as Professor Larson points out, "practically every fact the [commission] finds bears on its jurisdiction—it has no jurisdiction to award compensation in the absence of such facts as employment relation, employment by the employer of the requisite minimum number of employees, injury in the course of employment, injury arising out of employment, personal injury, injury by accident, existence of dependency in death cases, timely filing of claim, absence of self-injury, and so on. * * *" 3 Larson, *supra*, at 15-959 to 15-961, Section 80.41.

{¶ 58} If we were to follow the logic that a given issue is unwaivable merely because we have referred to it as "jurisdictional," virtually every issue could be raised for the first time at even the last stages of an appeal. This would in no small way disrupt the manifold rules that this court has carefully established to facilitate the orderly and fair administration of justice. See *State ex rel. Quarto Mining Co. v. Foreman* (1997), 79 Ohio St.3d 78, 679 N.E.2d 706. Moreover, "the net result [would be] that the agency expressly created and empowered to find the facts and administer the Act is * * * deprived of all effective ability to perform its duty, and is reduced to presiding over a hollow preliminary ritual." 3 Larson, *supra*, at 15-961, Section 80.41.

{¶ 59} We must conclude, therefore, that the issue of whether R.C. 4123.84 should bear the "jurisdictional" label is a misdirected question. There is no more

magic inherent in the word "jurisdictional" than there is in the word "duty," the term "special relation," see *Estates of Morgan v. Fairfield Family Counseling Ctr.* (1997), 77 Ohio St.3d 284, 298, 673 N.E.2d 1311, 1322, or the term "direct evidence." *Mauzy v. Kelly Serv., Inc.* (1996), 75 Ohio St.3d 578, 586, 664 N.E.2d 1272, 1279. Like duty, jurisdiction is only a word with which we state our conclusion and, like "direct evidence," it is capable of denoting more than a single thought. As one court succinctly summarized: "These cases illustrate the problem resulting from various applications of the concept of 'jurisdiction.'" *Ball v. Indus. Comm.* (1972), 30 Colo.App. 583, 586, 503 P.2d 1040, 1042.

{¶ 60} Thus, to say that R.C. 4123.84 is or is not "jurisdictional" in nature begs the essential question in this case—whether the limitations bar is a waivable defense. Hitherto, this court has not had the opportunity to address this precise issue.

{¶ 61} In its argument, the employer focuses on the waiver provisions set forth in R.C. 4123.84. "By paying compensation or benefits, the self-insurer is in effect waiving the two-year bar set forth in R.C. 4123.84, since the employer is put on notice of a possible claim." *Wargetz, supra*, 11 Ohio St.3d at 17, 11 OBR at 51, 462 N.E.2d at 1217. The same would hold true of a state-fund employer who, "with knowledge of a claimed compensable injury or occupational disease, has paid wages in lieu of compensation for total disability." R.C. 4123.84(A)(2).

{¶ 62} We agree with the employer that the two-year bar set forth in R.C. 4123.84 cannot be waived by payments made after the two-year period has run. By the express provisions of R.C. 4123.84(A), these events, to result in a waiver, must occur within the two-year period. Moreover, recognizing this kind of waiver within the two-year period is supported by policy, in that voluntary payment before the claim becomes time-barred obviates the concern over the employer's ability to protect itself by prompt investigation, and may mislead the claimant to believe that timely notice is no longer necessary. *Mewhorter, supra*, 23 Ohio St.3d at 14-15,

23 OBR at 12, 490 N.E.2d at 611; see, also, *Wargetz, supra*, 11 Ohio St.3d at 17, 11 OBR at 51, 462 N.E.2d at 1217. However, "[w]hen the policy or purpose disappears, it may be doubted whether the waiver can survive. Thus, if the voluntary payment of compensation is made for the first time after the entire claim period has run, it cannot be accused of influencing claimant as a reasonable person to withhold making claim." 2B Larson, *supra*, at 15-426.32(33) to 15-426.32(34), Section 78.71.

{¶ 63} However, valid waiver may also take a procedural form. This occurs when a party fails to raise the defense promptly. This court has applied procedural waiver to a number of issues denominated jurisdictional. In *Miles, supra*, 133 Ohio St. 613, 11 O.O. 339, 15 N.E.2d 532, the court held waived issues of situs of injury, the requisite minimum number of employees, and the status of the employer as self-insuring.

{¶ 64} In *State ex rel. Gibson v. Indus. Comm.* (1988), 39 Ohio St.3d 319, 320, 530 N.E.2d 916, 917, the court held:

"[Claimant's] sole proposition before this court is that the commission's assumption of jurisdiction over an issue that she did not intend to relitigate violated her right to due process of law. We hold that this issue was not raised previously, and therefore has been waived."

{¶ 65} Recently, in *Quarto Mining Co., supra,* 79 Ohio St.3d 78, 679 N.E.2d 706, we held the defense of voluntary retirement to have been procedurally waived. In so doing, we relied in part on *Bohn v. Watson* (1954), 130 Cal.App.2d 24, 37, 278 P.2d 454, 462, in which it was stated:

"Had [appellant] desired to avail herself of the asserted bar of limitations, she should have done so in the administrative forum, where the commissioner could have prepared his case, alert to the need of resisting this defense, and the hearing officer might have made appropriate findings thereon."

**{¶ 66}** We can find no valid reason to hold that procedural waiver should not also apply to the defense of untimely notice under R.C. 4123.84. There is no provision in R.C. 4123.84 which expressly precludes the application of waiver to its notice requirements. Instead, it contains its own waiver provisions, and provides that any pending claim "in which the remedy is affected by this section" shall be governed by its terms. R.C. 4123.84(D). Moreover, the adoption of the "knew or should have known" test indicates that there are other circumstances under which the court may excuse late filing. It is not unreasonable, therefore, to interpret R.C. 4123.84 as a defense in bar of a claim which is waived if not raised, rather than as a condition precedent to the power or authority of the commission to act. "Additionally, when we seek to interpret R.C. 4123.84 we are obliged to follow the dictates of R.C. 4123.95 which requires a liberal construction of 'sections 4123.01 to 4123.94, inclusive' in favor of employees." *Mewhorter, supra*, 23 Ohio St.3d at 15, 23 OBR at 12, 490 N.E.2d at 611.

**{¶ 67}** Other state courts have reached similar conclusions. In *Frazier v. Indus. Comm.* (1985), 145 Ariz. 488, 490, 702 P.2d 717, 719, the employer argued that "A.R.S. § 23-947, as amended in 1980, provides only certain limited exceptions in which the commission may act if a request for hearing is not filed within 90 days. From this premise, the [employer] argues that the limitation period is now a jurisdictional bar which may be raised for the first time on appeal."

**{¶ 68}** The court disagreed, holding in part that "[s]ince the court, under certain circumstances, may excuse a late filing, such time limitations are not jurisdictional." *Id.*, 145 Ariz. at 491, 702 P.2d at 720.

**{¶ 69}** In *Ball, supra*, 30 Colo.App. at 588, 503 P.2d at 1042, the court similarly found: "The fact that the court held the time limitation tollable indicates that the court could not have regarded the limitation to be jurisdictional." Accordingly, the court went on to hold that "[t]he time limitation of C.R.S. 1963, 81-14-19 is a statute of limitation which may be pled as a bar to a claim. This

limitation is not a limitation of authority or jurisdiction, but is instead a legal defense." *Id.* at 589, 503 P.2d at 1043. Likewise, in *Logan Cty. v. York* (Okla.1954), 270 P.2d 968, 970, the court explained that "since we have held that the statute of limitations applicable here may be waived or tolled, we do not have a jurisdictional question * * *."

{¶ 70} Thus, the majority of courts hold that the defense of lateness in filing claims or giving notice may be lost by failure to raise it promptly. 2B Larson, *supra*, at 15-426.32(34), Section 78.72. As Professor Larson explains:

"[I]n spite of the impressive list of earlier authorities that could be mustered to support the 'jurisdictional' view, the entire content of the present section belies the present validity of the idea, since, taken at face value, it would simply mean that none of the relaxations or waivers herein discussed, based on the conduct of employer or employee, could exist except where authorized by express statutory enactment. Regardless, then, of the theoretical question whether late filing goes to the right so as to affect jurisdiction, or to the remedy only, the practical fact seems to be that one way or another this defense can be lost by waiver in the various forms discussed." *Id.* at 15-426.32(40) to 15-426.32(41), Section 78.73.

{¶ 71} Lastly, the employer alleges that it did not discover Dr. Arnold's 1988 report until after its November 16, 1992 motion accepting claimant's residual condition, and that it thereafter raised the statute of limitations defense at each administrative level.

{¶ 72} In *Baker, supra*, 69 Ohio St.3d at 206, 631 N.E.2d at 142, we adopted the following reasoning of the court of appeals in *State ex rel. Saunders v. Metal Container Corp.* (Nov. 29, 1988), Franklin App. No. 87AP-509, unreported, 1988 WL 129162:

"'[W]hen * * * the employer is self-insured[,] [t]he initial determination of allowed conditions necessarily is made by the employer in such a situation. The district hearing officer cannot modify that finding over the objection of the

claimant, upon the assumption that the self-insured employer erroneously certified the condition. The district hearing officer had no jurisdiction under R.C. 4123.52, or otherwise, to modify the original finding of the employer as to the allowed condition over the objection of the claimant. The employer who made the determination and certified the claim cannot now complain, as it attempted to do before the district hearing officer * * * that it, the employer, had made an erroneous determination and certification as to the allowed condition.'"

{¶ 73} Thus, the limitations defense is waived at the moment the employer accepts claimant's residual psychiatric condition as part of the claim.

{¶ 74} The fact that the employer expresses surprise at having discovered Dr. Arnold's report subsequent to accepting the claim is irrelevant. There is no evidence in the record, and, indeed, no allegation made, that Dr. Arnold's report was fraudulently withheld. In fact, the employer chose to accept the residual condition based on Dr. Clary's September 25, 1992 report, which specifically stated that claimant "saw a psychologist, Dr. Arnold in 1988 for Social Security disability" and that since 1987, when he became unable to work, "he has felt anxious and depressed."

{¶ 75} We hold that a self-insured employer makes a conclusive determination to allow a claim for a residual or "flow-through" condition when it accepts the condition as part of the claim, even where such acceptance occurs after the limitations period set forth in R.C. 4123.84 has run. Accordingly, we reverse the judgment of the court of appeals insofar as it bears on this issue.

{¶ 76} However, since it is the self-insured employer who makes the initial determination of which conditions to accept, the only residual condition made part of this claim is the condition recognized by the employer in its motion, *i.e*., "the condition diagnosed by Dr. Clary as indicated in [his September 25, 1992] report." The condition diagnosed by Dr. Clary was "major depression and panic disorder."

**{¶ 77}** Accordingly, we reverse the judgment of the court of appeals, and the order of the commission is reinstated to the extent that it recognizes the residual condition "major depression and panic disorder."

*Judgment reversed.*

F.E. SWEENEY, PFEIFER and COOK, JJ., concur.

DOUGLAS, J., concurs separately.

LUNDBERG STRATTON, J., concurs in the syllabus and judgment only.

MOYER, C.J., concurs in judgment only.

————————————

**DOUGLAS, J., concurring.**

**{¶ 78}** I concur in both paragraphs of the syllabus as well as the opinion and ultimate judgment of the majority. Much of what Justice Resnick says in this opinion has needed saying for a long time. My only reservation and regret is that *Clementi v. Wean United, Inc.* (1988), 39 Ohio St.3d 342, 530 N.E.2d 909, is "modified" rather than "overruled."

————————————