[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] OPINION
John Crevison appeals from a judgment of the Clark County Court of Common Pleas, which granted summary judgment in favor of Navistar International Transportation Corp. ("Navistar") and dismissed his case. The trial court's judgment affirmed the Industrial Commission's denial of Crevison's workers' compensation claim for additional conditions stemming from a prior compensable injury.
The facts and procedural history are as follows.
On August 5, 1986, Crevison suffered an injury to his right leg while working at Navistar when he stepped on a bolt and fell. His workers' compensation claim was allowed for the conditions of acute strain and intramuscular hemorrhage of the right thigh and strain of the right knee. In 1989 and 1990, additional claims were allowed for aggravation of low back strain, aggravation of low back degenerative disc disease and arthritis, and post-traumatic degenerative arthritis of the right knee.
In June 1992, Crevison requested an additional allowance for degenerative disease of his left knee, a fatty tumor on his right side, and peripheral neuropathy of his lower extremities, conditions that he related to the 1986 injury. Such "flow-through" conditions, i.e., conditions developing in a body part not alleged in the original workers' compensation claim, are allowable pursuant to R.C. 4123.84(A)(1) when proper notice is given. A hearing officer allowed Crevison's claim for aggravation of degenerative disc disease in his left knee but disallowed the claim for the fatty tumor and peripheral neuropathy of the lower extremities. Navistar and Crevison appealed to the Regional Board of Review, which affirmed the hearing officer's decision in all respects. Upon further appeal, the Industrial Commission found that Crevison had failed to file his motion for the additional allowance for his left knee within the time required by R.C.4123.84(A)(3)(a) and disallowed this portion of his claim. The Commission also affirmed the denial of Crevison's fatty tumor and peripheral neuropathy claims.
Crevison appealed to the trial court, wherein Navistar filed a motion for summary judgment on the basis that Crevison had not filed his claims within the applicable limitations period. The trial court granted the motion and dismissed Crevison's case.
Crevison asserts five assignments of error on appeal. Because the issues raised in the first three assignments are related, we will address these assignments together.
 I. THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT TO DEFENDANT EMPLOYER. II. THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT BECAUSE THERE IS NO BASIS FOR FINDING THAT MR. CREVISON KNEW OR SHOULD HAVE KNOWN OF THE ADDITIONAL CONDITIONS MORE THAN TWO YEARS BEFORE THE MOTION TO ALLOW ADDITIONAL CONDITIONS WAS FILED. III. THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT BASED ON PRIOR LEFT KNEE COMPLAINTS MADE BY MR. CREVISON WHERE THE CONDITION WAS A PROGRESSIVE ONE WHICH DID NOT TRIGGER A REQUIREMENT FOR FILING AS RECOGNIZED BY THE SUPREME COURT IN LEWIS.
Crevison contends that his additional claim was filed in a timely fashion because no doctor had related his left knee problems to his prior right knee injury until April 1992, only two months before his request for an additional allowance. He claims that the Commission's finding that he knew at an earlier date that the problem with his left knee was related to the injury to his right knee imposed an unreasonable requirement that he somehow know more about his injury than his doctors did. In other words, Crevison argues that his own belief that the injuries were related, without more, was insufficient to trigger the statute of limitations. Crevison also claims that the progressive nature of his left knee condition tolled the statute of limitations because he had no reason to be aware of the seriousness of his condition prior to 1992.
Some additional background information about the course of Crevison's physical problems and his medical treatment will be helpful to our discussion of these assignments of error.
Crevison's injury to his right knee and thigh occurred on August 5, 1986. In the following days, when Crevison consulted with the Navistar doctor, Dr. Fiffer, about the injuries to his right leg, Crevison mentioned that he felt he was putting pressure on his left knee because of the way he was walking. Dr. Fiffer allegedly told Crevison that the left knee pain "was in [his] head."
Crevison had arthroscopic surgeries on his right knee in November 1986 and February 1987. In February 1988, Crevison was sent to Dr. David Halley for a second opinion about whether he needed a third surgery on his right knee. At that time, Crevison reported to Dr. Halley that he experienced "some discomfort in his left knee which he believes is coming from his right knee because he has had to put more weight on the left knee." In June 1988, Crevison also reported to Dr. Robert Larrick that he had a "fire-like pain" in his left knee that he attributed to strain on the knee. Drs. Halley and Larrick filed reports that noted Crevison's complaints about his left knee, but neither offered any medical opinion about the condition of the left knee or its cause.
In August 1989, Crevison saw Dr. Bowyer because of a burning sensation in both of his feet and legs. Dr. Bowyer diagnosed Crevison's condition as severe peripheral neuropathy. Dr. Bowyer's report did not relate Crevison's peripheral neuropathy to his prior injury and, in fact, indicated that the condition may be unrelated to Crevison's chronic back symptoms.
In early 1992, two physicians expressly stated for the first time their opinions that Crevison's left knee pain could be related to his prior injuries. Dr. Dan Ailes, Crevison's family practitioner, stated that "it would mechanically make logical sense that abnormal forces have been placed through the left knee" because of his back and right knee problems. Dr. Ailes also noted a fatty tumor on Crevison's right side, but he did not relate this condition to Crevison's prior injuries. Dr. DeBoo felt that chronic weight bearing and sympathizing with the right knee had caused Crevison's left knee pain.
Crevison's claim for an additional allowance for left knee pain, filed in June 1992, was denied by the Commission on the basis that it had not been filed within the two-year limitation period set forth in R.C. 4123.84(A)(3)(a). The additional allowances for peripheral neuropathy and the fatty tumor were denied for failure to establish a causal relationship between the conditions and the prior injuries. The trial court granted summary judgment in favor of Navistar based on the untimeliness of Crevison's claims and dismissed the case.
R.C. 4123.84 provides, in pertinent part:
 (A) In all cases of injury or death, claims for compensation or benefits for the specific part or parts of the body injured shall be forever barred unless, within two years after the injury or death:
 (1) Written notice of the specific part or parts of the body claimed to have been injured has been made to the industrial commission or the bureau of workers' compensation.
"[S]ince R.C. 4123.84 requires that a claim be filed within two years after the injury, when a new condition is discovered which flows from an original injury, a claim for the new condition must be made within two years from the discovery thereof." Clementi v.Wean United, Inc. (1988), 39 Ohio St.3d 342, 344. An additional flow-through condition is deemed to have been discovered when the claimant knew or should have known of the condition. Id. at 347. Because this standard is essentially one of due diligence, the focus properly rests on the reasonableness of the claimant's conduct under all of the surrounding circumstances. Lewis v.Trimble (1997), 79 Ohio St.3d 231, 239. "This requires that all relevant factors bearing on the question of reasonableness be considered, including, but not limited to, the information available to claimant, his or her experience, education and intellectual functioning, and what he or she had been told or not told about the nature, seriousness, and probable compensable character of the condition." Id. A specific diagnosis is not required before a claimant may be found to have discovered an additional condition. Id. at 239-240; McCurdy v. Mihm (1993),89 Ohio App.3d 363, 369; Smith v. Berry (March 26, 1993), Montgomery App. No. 13431, unreported.
We will first address the trial court's summary judgment in favor of Navistar on the timeliness of Crevison's requested allowance for left knee pain. Crevison claims that he could not have filed this claim prior to 1992 because no doctor had related his left knee pain to his right knee injury before then. Because a specific diagnosis is not a prerequisite to the discovery of a work-related injury, Lewis, supra, the failure of Crevison's doctors to specifically relate his left knee complaints to his prior injury was not, in itself, dispositive of the timeliness of his claim. Rather, we must look at all of the information available to Crevison and whether a reasonable person in Crevison's position should have known at an earlier date that the conditions were related.
Crevison admitted in his deposition that he had believed all along that the pain in his left knee was a result of the injury to his right knee and that he had reported this belief to his doctors. The first doctor told him, within days of the accident, that the left knee pain "was in [his] head." Later, Crevison told the doctors who were treating his right knee about the left knee pain and his belief about its cause, but the doctors did not offer any opinion about the cause of the left knee pain. Throughout the course of his treatment, Crevison apparently did not request a definitive opinion from his doctors about the cause of his left knee pain and, as a result, he did not obtain such an opinion until 1992. In our view, whether Crevison acted reasonably and exercised due diligence in ascertaining the nature and cause of his left knee pain is a close call and, as such, it must be resolved in Crevison's favor for purposes of summary judgment. Therefore, we conclude that a genuine issue of material fact existed as to whether a reasonable person in Crevison's position would or should have known that his left knee pain and right knee injury were related or would or should have been more diligent in attempting to determine whether they were related. Simply put, there was a material issue of fact as to whether Crevison knew or should have known more than two years before he filed his claim that the left knee pain was causally related to the right knee injury.
Crevison relies upon Lewis, supra, Edwards v. ATTTechnologies, Inc. (1989), 42 Ohio St.3d 119, and Hoar v.Schneider Transport, Inc. (1991), 68 Ohio App.3d 450, in support of his claim that a reasonable person would not have known that his left knee condition was related to the prior right leg injury. Although we find that a genuine issue of material fact exists, we find the cases cited by Crevison to be distinguishable. In those cases, there was no indication that the claimants had believed or even had suspected that the flow-through conditions were related to the initial injury prior to the specific diagnoses. Moreover,Lewis, Edwards, and Hoar involved psychological conditions that had developed following physical injuries. In our view, a reasonable person without medical training is more likely to know that two physical conditions might be related than to know that a psychological condition might be related to an existing physical condition. Accordingly, these cases are not on all fours with Crevison's case and do not control its outcome.
Nevertheless, for the reasons set forth supra, summary judgment was inappropriate on Crevison's left knee claim.
The second issue presented is whether Crevison knew or should have known, prior to June 1990, that his peripheral neuropathy was related to his right leg injuries. Crevison was diagnosed with severe peripheral neuropathy in August 1989. The condition caused a burning sensation in Crevison's feet and legs. Crevison first noticed the burning sensation following the first surgery on his right leg, and he testified that he "really didn't know" whether he had believed the pain was connected with his prior injury until Dr. Ailes noted the possible connection in 1992. Crevison had reported his pain to Drs. Larrick and Halley in 1988. Dr. Larrick's report indicated that Crevison had complained that his feet "burn[ed] like fire most of the time" and that the intensity of his pain was related to the severity of his "lower back complaints." There was no evidence to suggest, however, that in his mind, Crevison had related the burning in his lower extremities to his right knee injury, or that any doctor had told him that the condition might be related to that injury. As such, there was a genuine issue of material fact as to whether a reasonable person in Crevison's position should have known that the peripheral neuropathy was related to the prior injuries before June 1990, and the trial court erred in granting summary judgment on this portion of Crevison's claim.
Crevison's first, second, and third assignments of error are sustained.
 IV. THE TRIAL COURT ERRED IN ORDERING THAT "THE CASE IS DISMISSED" WHERE THERE IS NO BASIS TO DISMISS THE FATTY TUMOR CLAIM AND THERE WAS NO MOTION FOR SUMMARY JUDGMENT ON THAT POINT.
Crevison claims that the trial court erred in dismissing the case when it granted summary judgment because Navistar had not moved for summary judgment on Crevison's fatty tissue claim. Navistar agrees that the fatty tumor claim was not addressed in its motion, and thus was not properly dismissed, although it questions whether Crevison seriously pursued this claim in the administrative proceedings. Accordingly, the trial court erred in dismissing the fatty tissue claim.
The fourth assignment of error is sustained.
 V. THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT BECAUSE ASSUMING ARGUENDO THAT THE STATEMENTS CONTAINED IN THE MEDICAL REPORTS INDICATE THAT MR. CREVISON HAD KNOWLEDGE OF THE CONDITION AT THAT TIME, THE DOCTOR'S REPORTS PROVIDED THE EMPLOYER AND BUREAU OF WORKERS' COMPENSATION WITH NOTICE OF THE CLAIM AND THEREFORE TOLL THE LIMITATIONS PERIOD.
Crevison contends that, even if the limitations period on his left knee flow-through claim had begun to run in 1988, the reports filed by Drs. Larrick and Halley with Navistar and the Bureau of Workers' Compensation in 1988 and 1989 had satisfied the notice requirements of R.C. 4123.84. Crevison claims that the reports tolled the statute of limitations by providing Navistar with notice of Crevison's left knee injury.
R.C. 4123.511(A) provides that "[i]f the bureau receives from a person other than the claimant written or telecommunicated information indicating that an injury * * * has occurred * * * which may be compensable under this chapter, the bureau shall notify the employee and the employer of the information. * * * The receipt of the information * * * and the notice by the bureau shall be considered an application for compensation under R.C. 4123.84
* * *." The supreme court has held, however, that a bare reference to a medical condition in a physician's report does not constitute a request for recognition of that condition by a claimant. Stateex rel. Morrow v. Industrial Comm. (1994), 71 Ohio St.3d 236, 238. A passing mention of a claimant's complaint, without more, is insufficient to put the employer on notice of a claim for such injury so as to toll the statute of limitations. McKenney v.Hillside Dairy Co. (1996), 109 Ohio App.3d 164, 174.
On page two of Dr. Larrick's report, he mentioned that Crevison had complained about his left knee and had attributed it "to this latest [right knee] claim." Likewise, Dr. Halley's report states that, in addition to Crevison's right knee complaints, "he now complains of some discomfort in his left knee which he believes is coming from his right knee because he has had to put more weight on the left knee." No other references to Crevison's left knee complaints were contained in the reports, which, on the whole, are devoted to discussing the condition of his right knee and back. We find these references to Crevison's left knee complaints in the documents otherwise unrelated to that complaint to be the type of passing references that have been held not to satisfy the notice requirement of R.C. 4123.512(A). Further, Crevison's case can be distinguished from Mewhorter v.Ex-Cell-O Corp. (1986), 23 Ohio St.3d 13, the case upon which he relies in support of this argument. In Mewhorter, when the claimant was diagnosed with and treated for an alleged flow-through condition, the medical bills and reports, which referenced the claimant's prior claim numbers, were sent to the employer for payment. Although Mewhorter's motion for an additional allowance was filed more than two years after his condition was diagnosed, the supreme court held that the earlier filing of the medical bill and reports had constituted sufficient notice to toll the limitations period. The references to Crevison's left knee pain in reports that were not directed at the treatment of the knee and did not request payment for such treatment were very different in nature from the type of notice present in Mewhorter.
Crevison's fifth assignment of error is overruled.
The judgment of the trial court will be reversed, and the matter will be remanded for further proceedings.
YOUNG, P.J. and FAIN, J., concur.
Copies mailed to:
Stewart R. Jafffy
Marc J. Jaffy
Eric S. Bravo
Randall W. Mikes
Cheryl J. Nester
Hon. Richard O'Neill